JOHN W. DORRINGTON, SR., ET AL., APPELLEES, V. DAVID W. SOWLES, APPELLANT.

FILED JANUARY 3, 1912.   No. 17,101.

1. **Appeal:** CONFLICTING EVIDENCE.  In a law action, where the evidence is sufficient to sustain a judgment either way, the judgment of the trial court will be sustained on appeal.

2. **Forcible Entry and Detainer:** NOTICE TO QUIT.  Section 1022 of the code, requiring at least three days' notice as a condition precedent to the commencement of an action of forcible entry and detention, confers upon a tenant a right, which he may either rest upon or waive.

3. ——: ——: WAIVER.  And if, upon the trial of such an action, he objects to the introduction of a notice, defective in that particular, which has been duly served, upon other specific grounds only, he will be held to have waived such defect.

APPEAL from the district court for Richardson county: JOHN B. RAPER, JUDGE.  *Affirmed.*

*Clarence Gillespie* and *Edwin Falloon,* for appellant.

*Reavis & Reavis,* contra.

FAWCETT, J.

This action, of forcible entry and detention, was instituted in justice court and appealed to the district court, where it was tried to the court and a jury. When both sides had rested, each moved for a directed verdict. The motion of defendant was overruled and that of plaintiffs sustained. The judgment was entered for plaintiffs, and defendant appeals.

Defendant now urges that the court erred in taking the case from the jury. The rule that, where such action of the court below is invited by all of the parties, neither can predicate error thereon, is now too well settled in this court to longer require citation of authorities or reference to the rule in the syllabus.

The petition alleges the ownership of the property in controversy; that defendant had been a tenant from month to month; that on February 1, 1910, plaintiffs notified defendant in writing that his tenancy would end on March 1, 1910; that on March 1 they gave defendant a further notice in writing to quit and deliver up possession of the premises within three days of that date, and that defendant still forcibly and unlawfully retains possession. The answer denies every allegation not specifically admitted, admits the ownership of the building and the service of notice to vacate within three days, and alleges that defendant was holding the property in controversy under a lease expiring August 1, 1913, a copy of which is set out, but which need not be set out here. The answer contains some other allegations which we do not deem it necessary to refer to. The reply is a general denial, with a special denial that the defendant was holding under any written contract or that "he is anything other than a tenant of said property by sufferance."

It appears from the abstracts that defendant had been a tenant of the premises for many years. Mr. Dorrington, one of the plaintiffs, and the one who seems to have had the chief control of the property, testified that he re-

turned from a trip to Washington in May, 1907; that at that time defendant was behind some with his rent; that "he told me he wouldn't pay any of the rent unless I took in a shed he had built at the end or back of the store building, as he could get no special benefit from making ice cream unless I allowed that amount of money. I asked what it was, and he wanted us to pay for the shop. I didn't think it was right, we had fixed the room up, and I objected to it; but he insisted so strong, I said, 'All right, if I do you will have to pay me $50 a month for the building' (the rent prior thereto had been $40 a month), and he objected to that, and we finally compromised on $45 a month. There was no other reason why that rent was raised to $45. There was nothing said at that time about a long lease." On October 5, following, defendant prepared and signed the written lease, referred to in the answer, and submitted it to plaintiffs. Mr. Dorrington testifies that when he received it, on the evening of October 5, he was busy preparing to again visit Washington; that he signed the lease and left it with Mr. Towle, the husband of one of the other joint owners of the property. Before signing the lease Mr. Towle wrote in above the signature of defendant the words: "Said Sowles not to sublet said premises or any part thereof without the written consent of W. E. Dorrington." The lease was then witnessed and dated October 5, 1907. Below the signatures was written the notation: "The interlineations and changes made in foregoing contract were made by consent of both parties to same." This was dated "Oct. 5, 1907," and signed at that time by Mr. Dorrington. The testimony of Mr. Towle is: "I took the leases to Mr. Sowles the next morning. He looked them over, and said he would consider them, or he didn't know whether he would sign them or not. I didn't know whether he would agree to the contract as amended or not. I left the instrument with him. I conferred with him several times subsequently, and he kept putting me off. He said his boy

wanted him to sell out, and he was talking about taking a hotel in Fairbury first or probably in St. Joe. They wanted him to take charge of it. And I went in four or five times to get him to sign the contract and give us the duplicate, but he kept them and wouldn't sign it. When I asked him to sign the contract he made excuses. This was about a week or two afterwards." Defendant testified that, when Mr. Towle returned the leases to him, "I was busy and told him I would look the lease over and sign it. Mr. Towle called twice afterwards, within a week. When he called the next time I told him I hadn't signed it, as I was about to take a hotel at Fairbury, and in case I didn't get that I would continue there and sign the lease." The duplicate leases remained in the custody of defendant from that time until after plaintiffs had served him with the notice of February 1, 1910, when he produced the leases, signed as above shown. He says he had left the lease in a drawer, "and in rummaging around in the drawer I found it one day;" that he then signed it on the date shown under his signature, viz., August 10, 1909. He further testified: "I know the contract was written on the strength of the $5 raise."

The above extracts from the testimony of these witnesses show that there was a square conflict in the testimony upon the point as to whether defendant was ever, with the knowledge of the plaintiffs, in possession of the premises under the lease, or that the instalments of rent, which he subsequently paid, were paid by him under the supposition that they were being paid under the lease. If the evidence clearly showed that he was in possession under the lease, then the payment of rent by him and the acceptance thereof by plaintiffs would have bound both parties, even though defendant had never signed it, for the one year provided in the lease; and in like manner a payment of rent by defendant and acceptance of the same by plaintiffs without objection, after the expiration of the one year, would have made the lease good for the full period of five years. In such case the contention

of defendant and the authorities cited by him would be in point, and, had the trial court so found, we could not have disturbed such finding; but having found against defendant upon those points, upon testimony so substantially conflicting, we are in like manner concluded by such finding.

It is further objected by defendant that neither the justice court, the district court, nor this court has jurisdiction, for the reason that the notice served on March 1 to vacate within three days was insufficient, the suit having been commenced on March 4. Ordinarily this point would be good; but in the present case we think defendant has waived the right to insist upon this assignment. Upon the trial in the district court, when plaintiff offered the notice (exhibit 2) in evidence, defendant made this objection: "We admit that about March 1st, 1910, exhibit 2 was served upon the defendant, but object to its introduction because it is not a notice provided by law and that he should have been served with a six months' notice." This objection was properly overruled. It did not challenge the sufficiency of the notice upon the ground now urged. Defendant had been insisting all the time that he was in possession under a lease that would not expire until 1913, and that in any event he was a tenant from year to year, and as such was entitled to a six months' notice, and the objection above noted was in line with that contention.

Finding no reversible error in the record, the judgment of the district court is

AFFIRMED.