HARRY J. SMITH, APPELLEE, V. CHICAGO, ST. PAUL, MINNE-
APOLIS & OMAHA RAILWAY COMPANY, APPELLANT.

FILED APRIL 15, 1916.   No. 18360.

1. Appeal: CONFLICTING EVIDENCE. "In a law action, where the evi-
dence upon any disputed question of fact is sufficient to sustain a
finding either way, the finding of the trial court thereon will be
sustained on appeal." *Holmvig v. Dakota County*, 90 Neb. 576.

2. Statutes: CONSTRUCTION. "In construing an act of the legislature
all reasonable doubts must be resolved in favor of its constitution-
ality." *State v. Standard Oil Co.*, 61 Neb. 28.

3. Carriers: REGULATION. "Section 4, art. XI of the Constitution, does
not prohibit the legislature from increasing the common law liabil-
ity of common carriers." *Cram v. Chicago B. & Q. R. Co.*, 84 Neb.
607.

4. ———: "SPEED STATUTE:" CONSTITUTIONALITY: ELECTION OF REM-
EDIES. Sections 6018, 6019, Rev. St. 1913, known as the "speed stat-
ute," do not limit the liability of railroads as common carriers.
This statute affords the shipper of live stock a statutory remedy,
in addition to the common law remedy, by which he may recover
liquidated damages sustained by reason of the unreasonable delay
defined by the act, in the transportation of live stock ' from the
initial point of shipment to the place of feeding or destination.
This statute is not repugnant to section 4, art. XI of the Constitu-
tion. The common law remedy is not abrogated by the "speed
statute." The shipper has an election of remedies; he may still
bring his action under the common law, and recover for the actual
damages sustained.

5. ———: CLAIMS: ATTORNEY'S FEES: STATUTORY PROVISION: CON-
STITUTIONALITY. The due process of law and the equal protection
of the law, guaranteed by the fourteenth amendment to the Con-
stitution of the United States, are not denied to common carriers
by section 6063, Rev. St. 1913, which provides for the recovery
of a reasonable attorney's fee to be fixed by the court, in actions
on claims for loss or damage to property in any manner, or over-
charge for freight for which any common carrier in the state may
be liable, not adjusted and paid within the time limited by stat-
ute, and when the amount recovered exceeds the amount tendered
by the carrier. This statute only applies to claims for loss or dam-
age to property received by the carrier for shipment as freight,

and for overcharge for freight. This statute being applicable to all persons and corporations engaged in the business of common carriers in the state, and applying only to a limited kind of claims admitting of special legislative treatment, is not repugnant to the due process and equal protection provisions of the fourteenth amendment.

6. ———: ———: ———. Reasonable attorney's fees are properly assessed under section 6063, Rev. St. 1913, when the plaintiff is represented by an attorney of record.

APPEAL from the district court for Douglas county: ABRAHAM L. SUTTON, JUDGE. *Affirmed.*

*A. A. McLaughlin, Lyle Hubbard* and *Wymer Dressler*, for appellant.

*Earl R. Ferguson* and *Harry W. Shackelford, contra.*

McGIRR, C.

The plaintiff brought this action to recover damages in the sum of $78.77, which he alleged he sustained because of unreasonable delay occasioned by the defendant in the shipment of one car-load of cattle from Tyson, Nebraska, to South Omaha, Nebraska, on January 4, 1912, and to recover an attorney's fee in the sum of $50 in addition to such damages. The plaintiff alleged in his petition that the defendant is a railroad corporation, operating a railroad from Tyson, Nebraska, to South Omaha, Nebraska, and is a common carrier of freight over said railroad; that on the 3d day of January, 1912, at 12 o'clock P. M. of said day, the plaintiff delivered to the defendant, at said town of Tyson, for shipment to South Omaha, a consignment of 22 head of cattle, consisting of one car-load; that the distance over defendant's said line of railroad from Tyson to South Omaha is 35 miles, and the usual, customary and reasonable time required for conveying a shipment of live stock over defendant's said railroad from Tyson to South Omaha is not to exceed $3\frac{1}{2}$ hours; that, had this shipment been conveyed to destination within a reasonable time, the same would have arrived in prime condition

and in ample time to have enabled the plaintiff to have sold his said cattle on the early morning market for the highest price of that day; that defendant unreasonably delayed said shipment in transit for a period of 7 hours longer than was reasonably necessary, and did not deliver said shipment at destination until 10:45 o'clock A. M. on January 4; that, by reason of said delay, the cattle shrunk in weight 30 pounds per head in addition to the usual shrinkage on such a shipment, to plaintiff's damage in the sum of $34.25; that, by reason of the exhausted condition and gaunt appearance of the cattle upon their arrival at the market, there was a further loss of 5 cents per hundredweight due to depreciation in grade and quality, amounting to $11.13; that when the cattle were delivered at destination the market price of such cattle had fallen 10 cents per hundredweight below the earlier market of that day, causing a further loss of $33.39, and that plaintiff's total damages aggregated $78.77. The plaintiff further alleged that he filed his claim for said damages with defendant, as provided by law, on January 16, 1912; that more than 90 days had elapsed since the filing of said claim; that the same had not been paid; and plaintiff prayed judgment for an attorney's fee in the sum of $50 in addition to his said damages.

The defendant by its answer admitted the shipment of said cattle; denied all other allegations in the petition; and alleged that its line of railroad from Tyson southward terminates at Omaha; that said shipment of cattle was transported by it from Tyson to Omaha with all due care and dispatch, and was there delivered to its connecting carrier, the Missouri Pacific Railway Company; that under the contract of shipment it was agreed that defendant should not be liable for any delay to said shipment not occurring on its own line; that the weather was extremely cold, which rendered it difficult for defendant to operate its trains within the time which they could

be operated in good weather. The plaintiff's reply was a general denial.

The jury found for the plaintiff and returned a verdict for $85.77, and for an attorney's fee of $50. The plaintiff thereafter filed a remittitur amounting to $12.-13, being the item of damages for the gaunt appearance of the cattle, and the trial court rendered judgment for the plaintiff on the verdict of the jury for $73.-67 damages and $50 attorney's fee. The trial court thereafter set said judgment aside and rendered judgment on the verdict of the jury in favor of the plaintiff for $85.77 damages, and for an attorney's fee of $50, being a total judgment for plaintiff in the sum of $135.77.

From this judgment the defendant appeals, and asks a reversal for alleged errors of the trial court, which, for the purpose of discussion and determination, may be resolved into three propositions, viz.: (1) That the verdict of the jury is not sustained by sufficient evidence. (2) That, if plaintiff was entitled to recover at all, he was only entitled to recover the liquidated damages provided for by sections 6018, 6019, Rev. St. 1913, commonly known as the "speed statute;" that said statute affords the exclusive measure of recovery in actions for damages resulting from delay in transit to car-load shipments of live stock, and supersedes the measure of recovery which was available at common law. (3) That the assessment of an attorney's fee as a part of the judgment against the defendant, under the provisions of section 6063, Rev. St. 1913, deprives the defendant of the due process of the law and of the equal protection of the law, guaranteed by the fourteenth amendment to the Constitution of the United States; and that, inasmuch as the case at bar was conducted in the courts by an attorney who was not employed by the plaintiff, but was furnished by an association or collection agency which had undertaken for profit to collect plaintiff's claim against the defendant, to assess a statutory at-

torney's fee in favor of such client, for the benefit of such association or such attorney so acting, is in violation of public policy.

It appears from the evidence that the plaintiff, pursuant to the orders of defendant's agent at Tyson, had his stock loaded in the car and ready for transportation at 12 o'clock, midnight, on the 3d day of January, 1912; that the defendant's train which conveyed said stock to South Omaha did not arrive at Tyson until 2:30 o'clock A. M. on January 4; that the train made several long stops at various stations between Tyson and South Omaha; that the crew in charge of the train appeared to be working with the hose connected with the air brakes, sometimes when the train was stopped, and at other times appeared to be doing nothing and making no effort to move the train. The train consisted of 2 engines and about 28 cars. By reason of defendant's unreasonable delay in starting plaintiff's shipment of cattle from Tyson, and the further unreasonable delay in transit, the plaintiff suffered material and substantial damages. The verdict and judgment for damages, except as to the amount for which plaintiff filed a remittitur, is amply sustained by the evidence. "In a law action, where the evidence upon any disputed question of fact is sufficient to sustain a finding either way, the finding of the trial court thereon will be sustained on appeal." *Holmvig v. Dakota County,* 90 Neb. 576. *Dorrington v. Sowles,* 90 Neb. 587.

As to the defendant's second proposition, the plaintiff contends that, if the shipper's common law right of action is held to be abrogated by the "speed statute," then that statute must be held to be unconstitutional, as being in violation of section 4, art. XI of the Constitution, which provides that "the liability of railroad corporations as common carriers shall never be limited." Sections 6018, 6019, Rev. St. 1913, known as the "speed statute," are as follows:

"6018. It is hereby declared and made the duty of each corporation, individual or association of individuals, operating any railroad as a public carrier of freight in the state of Nebraska, in transporting live stock from one point to another in the state in car-load lots, in consideration of the freight charges paid therefor, to run their train conveying the same at a rate of speed so that the time consumed in the journey from the initial point of receiving such stock to the point of feeding or destination, shall not exceed one hour for each eighteen miles traveled, including the time of stops at stations or other points: Provided, in cases where the initial point is not a division station, and on all branch lines not exceeding one hundred and twenty-five miles in length, the rate of speed shall be such that not more than one hour shall be consumed in traversing each fourteen miles of the distance, including the time of stops at stations or other points, from the initial point to first division station or over such branches. The time consumed in picking up and setting out, loading or unloading stock at stations shall not be included in the time required, as provided in this schedule: Provided, further, upon branch lines not exceeding one hundred and twenty-five miles in length, live stock of less than six cars in one consignment, each railroad company in this state may select and designate three days in each week as stock shipping days, and publish and make public the days so designated, and, after giving ten days' notice of the days so selected and designated, shall be required upon its branch lines to conform to the schedule in this section provided only upon the days so designated as stock shipping days.

"6019. Any individual, corporation or association of individuals violating any provisions of the next preceding section shall pay to the owner of such live stock the sum of ten dollars for each hour for each car it extends or prolongs the time of transportation beyond the

period herein limited as liquidated damages to be recovered as other debts are recovered."

In the case of *Cram v. Chicago, B. & Q. R. Co.*, 84 Neb. 607, in considering the constitutionality of the "speed statute," this court held as follows: "Section 4, art. XI of the Constitution, does not prohibit the legislature from increasing the common law liability of common carriers, and, in case the legislature expands such liability, the courts will not declare the statute void on the complaint of the carrier, because in some hypothetical case the law, if applied, might work to the disadvantage of a shipper."

In the *Cram* case, *supra,* this court regarded the "speed statute" as an increase of the common law liability of railroad corporations as common carriers, and therefore not in conflict with the provision of the Constitution which prohibits the limitation of such liability, and with that reasoning we are now in accord. The speed statute provides an additional remedy by which the shipper may recover liquidated damages in event that the common carrier fails to run its train conveying such shipper's live stock, from the initial point of receiving such live stock to the point of feeding or destination, at the average rate of speed provided by the statute. This statute affords a remedy by which the shipper may recover only for damages sustained by reason of delay in the transportation of the live stock from the point of shipment to the place of feeding or destination, after the train commenced to move on the journey. Damages so sustained are always difficult to prove, and are often not susceptible of proof. Yet there is always some damage due to such delay in transit, and the legislature, by the enactment of the "speed statute," without limiting the common law liability of railroads as common carriers, has provided a means by which such damages are liquidated, and may be recovered without other or further proof as to amount, except proof of the failure of the carrier to move the shipment at the

average rate of speed required by the statute. The "speed statute" does not provide for the recovery of damages sustained by reason of delay of the carrier in starting the shipment to move after it has been received by it; for loss of, or injury to, the live stock by reason of want of due care, or by violence on the journey. For damages sustained from such causes, and from all causes, including the unnecessary delay defined by the "speed statute," the shipper still has his common law remedy. If all of the damages sustained are caused by the unreasonable delay in transit defined by the "speed statute," the shipper may, at his election, bring his action either under the statute for the liquidated damages fixed by the "speed statute," or under the common law for the actual damages sustained. "In construing an act of the legislature all reasonable doubts must be resolved in favor of its constitutionality." *State v. Standard Oil Co.*, 61 Neb. 28. In the case at bar a part of the damages sustained by the plaintiff was due to the unreasonable delay of the defendant in starting the shipment to move on its journey after it had been received by the defendant. The plaintiff, in conformity with the order of defendant's agent, had his live stock loaded on the car at midnight, and the defendant's train did not arrive and start the shipment to move on its journey until 2:30 o'clock in the morning. The plaintiff elected to bring his action under the common law for all damages sustained by him, and he recovered only for the actual damages proved.

For its third proposition the defendant contends that the trial court erred in assessing an attorney's fee for plaintiff's attorney, under the provisions of section 6063, Rev. St. 1913, which is as follows:

"6063. Every claim for loss or damage to property in any manner, or overcharge for freight for which any common carrier in the state of Nebraska may be liable, shall be adjusted and paid by the common carrier delivering such freight at the place of destination within

sixty days, in cases of shipment or shipments wholly
within the state, and within ninety days in cases of
shipment or shipments between points without and points
within the state, after such claim, stating the amount
and nature thereof accompanied by the bill of lading or
duplicate bill of lading or shipping receipt showing
amount paid for or on account of said shipment, which
shall be returned to the complainant when the claim is
rejected or the time limit has expired, shall have been
filed with the agent, or the common carrier at the point
of destination of such shipment, or at the point where
damages in any other manner may be caused by any
common carrier. In the event such claim, which shall
have been filed as above provided within ninety days
from the date of the delivery of the freight in regard to
which damages are claimed, is not adjusted and paid
within the time herein limited, such common carrier
shall be liable for interest thereon at seven per cent.
per annum from the date of the filing of such claim, and
shall also be liable for a reasonable attorney's fee to
be fixed by the court, all to be recovered by the con-
signee or consignor, or real party in interest, in any
court of competent jurisdiction: Provided, in bringing
suit for the recovery of any claim for loss or damage
as herein provided, if the consignee or consignor, or
real party in interest, shall fail to recover a judgment
in excess of the amount that may have been tendered in
an offer of settlement of such claim by the common car-
rier liable hereunder, then such consignee or consignor,
or real party in interest, shall not recover the inter-
est penalty or attorney's fees herein provided."

The defendant contends that due process of law and
the equal protection of the law guaranteed by the four-
teenth amendment of the Constitution of the United
States are both denied to the defendant by this statute.
The constitutionality of similar statutes of other states
has been passed on by the supreme court of the United
States. In the case of *Gulf, C. & S. F. R. Co. v. Ellis*,

165 U. S. 150, a statute of the state of Texas providing that an attorney's fee of $10 should be recovered in actions on claims against railway companies for personal services rendered or labor done, or for damages, etc., was held to be invalid and in conflict with the due process and equal protection provisions of the Constitution of the United States, for the reason that the Texas statute singles railway companies out of all citizens and corporations, and requires them to pay in certain cases attorney's fees to the parties successfully suing them, while it gives to them no like or corresponding benefit. In the case of *Missouri, K. & T. R. Co: v. Cade,* 233 U. S. 642, a later statute of Texas providing for the recovery of attorney's fees in actions on certain kinds of claims, against any person or corporation doing business in the state, was held to be valid, for the reason that the statute did not single out a particular class of debtors, and applied only to certain kinds of claims. In the case of *Yazoo & M. V. R. Co. v. Jackson Vinegar Co.,* 226 U. S. 217, a statute of Mississippi providing for the recovery of a penalty of $25 in addition to the amount of the claim in actions on claims against common carriers amounting to $200 or less, not settled by the carrier within the time limited by statute, was held to be valid, for the reason that it applied to all common carriers, whether persons or corporations, and because the statute was applicable only to a certain class of claims admitting of special legislative treatment. Section 6063, Rev. St. 1913, applies to all common carriers in the state of Nebraska, whether persons or corporations. It is not open to the objection that it singles out a certain class of debtors and imposes upon them burdens not imposed upon other debtors engaged in the same kind of business. This statute provides for the recovery of a reasonable attorney's fee, to be fixed by the court, in actions on a certain kind of claims, viz., claims for loss or damages to property in any manner, or overcharge for freight. It was not the intention of the legislature to

make this act applicable to claims for the loss or damage to all property, including property upon or adjacent to a railroad, but only to property received by the carrier as freight for transportation. This is made clear by the requirements of the act that all claims must be accompanied by the bill of lading or duplicate bill of lading or shipping receipt, when returned to the complainant by the carrier, upon the rejection of such claims. Individual claims against common carriers for loss or damage to shipments of freight and for overcharges for freight are in most cases so small that the consignor could not afford to litigate such claims if he were compelled to pay attorney's fees. To remedy this wrong which the shipper might otherwise be required to suffer without redress, it is within the power of the legislature to provide for the recovery by the shipper of a reasonable attorney's fee in a successful action, upon a claim within the class comprehended by the act referred to. This act being applicable to all persons and corporations engaged in the business of common carriers in the state, and applying only to a certain class or kind of claims admitting of special legislative treatment, is valid, and not repugnant to the due process of law and equal protection of the law provisions of the fourteenth amendment to the Constitution of the United States.

As to the defendant's contention that an attorney's fee should not have been assessed, for the further reason that the plaintiff placed his claim for collection in the hands of an association organized for profit, that the suit was brought through the attorney for the association, and that said association is therefore engaged in the unlawful practice of the law, and the allowance of an attorney's fee in such case is against public policy, we will agree with the defendant that cases might arise wherein it would be against public policy to permit the recovery of an attorney's fee by such an association. In the case at bar, however, it appears that the attorney for whose benefit the attorney's fee was assessed

was the attorney of record for the plaintiff, and conducted the case for him in the trial court. We think the attorney's fee was properly assessed for the benefit of plaintiff's attorney of record, in payment for legal services rendered by him. The judgment of the district court should be affirmed.

For the reasons stated in the foregoing opinion, the judgment of the district court is affirmed, and the foregoing opinion is adopted by and made the opinion of the court.

AFFIRMED.