SUNDERLAND BROTHERS COMPANY, APPELLEE, v. MISSOURI PACIFIC RAILWAY COMPANY, APPELLANT.

FILED APRIL 14, 1917.   No. 19285.

1. **Commerce:** RECIPROCAL DEMURRAGE ACT: VALIDITY. The provisions of the reciprocal demurrage act (sections 6159-6167, Rev. St. 1913) relating to intrastate and interstate commerce are held to be separable, and the act, as applied to commerce within the state is held not to violate the Constitution of the United States or the Constitution of the state of Nebraska.

2. **Carriers:** RECIPROCAL DEMURRAGE ACT: CONSTRUCTION. Section 6162, Rev. St. 1913, construed, and *held*, that the duty of a railway company to make prompt delivery of cars is not ended when the cars are placed upon a "hold track" to await orders from the consignor or consignee, but the running of the time allowed by such section for delivery is only suspended while cars are so held.

APPEAL from the district court for Douglas county: WILLIS G. SEARS, JUDGE. *Affirmed.*

*B. P. Waggener, J. A. C. Kennedy* and *Guy C. Kiddoo,* for appellant.

*Baldrige, Keller & Keller, contra.*

LETTON, J.

This action is brought to recover damages under certain provisions of sections 6159-6167, Rev. St. 1913 (known as

the reciprocal demurrage act), which require freight to be moved not less than 50 miles in 24 hours under liability for damages of $1 a car (unless prevented by a large number of contingencies, which are matters of defense) and which impose damages of $1 for each day cars are delayed in delivery.

Plaintiff is a dealer in building materials at Omaha. The defendant is a common carrier operating an interstate railroad. The petition alleges that at certain specified times from July, 1909, to December, 1912, building material in car-load lots was delivered at Louisville, Nebraska, with instructions to ship to points within the state over the defendant road; that bills of lading were issued for each shipment; that defendant failed to transport the shipment within the time provided by law. It is also alleged that the defendant failed to place loaded cars at a place accessible for unloading within the time required by law, and that the plaintiff had presented its claim for damages more than 60 days prior to the commencement of the suit.

In answer, defendant alleges that the statute prescribing a time limit for the movement of freight is in violation of the Constitution of the United States and the Constitution of the state of Nebraska; that, since congress has asserted its authority over interstate commerce, all regulations of the state of Nebraska affecting the carriage of goods by railroads and common carriers between states have been superseded; and that the trains and cars referred to in the petition were engaged in interstate commerce. As to the complaint of delay in placing the cars for unloading, the answer alleges that the plaintiff has three yards in Omaha in different sections of the city, and that at plaintiff's request the cars were not placed upon the public delivery track, but for the accommodation of plaintiff were placed upon a "hold track" of defendant to await plaintiff's order for delivery to its several yards.

A jury was waived and trial had to the court, which found that the statute was constitutional; that the defendant made 295 days' delay in the shipments and 345 days'

delay in the placing of cars after arrival. Judgment was rendered for $640 and an attorneys fee of $250.

The first complaint is that the statute violates both the Constitution of the state and of the United States, because it is an interference with and burden upon interstate commerce; that its provisons are so intermingled as to intrastate and interstate commerce that they are inseparable and the whole act must fall.

The superintendent of the western district of defendant and other operating officials testified that the average time of movement of freight cars on main lines in the United States generally is 2 hours and 24 minutes in each 24 hours; on defendant's road the average distance traveled by each freight car is slightly over 24 miles every 24 hours; which is slightly above the average of other roads throughout the United States; that traffic wholly within Nebraska might be moved at the statutory rate, but that to do so would retard interstate traffic to the extent that state business was advanced; that in practical operation interstate and intrastate traffic must move together; that freight of both characters is often loaded in the same car, and they can no more be separated than you can separate state and interstate passengers and operate separate passenger trains for them; that it is impracticable and perhaps impossible to move freight in Nebraska 50 miles a day or 24 hours. This testimony was largely matter of opinion, and upon cross-examination it was admitted that it is not impracticable to move cars from Louisville to Omaha in 24 hours.

Is the statute constitutional? It applies to "every railroad company operating a line of railroad wholly or in part within this state." In one section it requires "the conductor of every train bringing freight in car-load lots into this state from any other state to note on the original waybill of each and every car-load of such freight, destined to points within this state, the year, month, day of the month and hour of the day, on which such car-load of freight entered this state, and to authenticate the same by

his signature." It provides a time for the removal of freight in bond after permit to receive the freight is issued to the consignee by the United States collector of customs; and, considered as a whole, it evidences an intention to regulate all traffic. So far as the act attempts to regulate commerce between the states, it is of no force or effect, since congress has acted upon the subject, and when congress has acted the power of the state ceases. *Southern R. Co. v. Reid*, 222 U. S. 424; *Chicago, R. I. & P. R. Co. v. Hardwick Farmers Elevator Co.*, 226 U. S. 426. The defendant insists that, since the act is invalid as respects interstate commerce, it is equally invalid as to commerce within the state. This is not a necessary conclusion. If the provisions of the act relating to interstate commerce can be disregarded and still leave a valid workable law, we see no reason why the act cannot be upheld so far as it applies to commerce within the state. It is true that some courts have held in somewhat similar circumstances that such a law will not permit a separation or division and the whole act must fall, but other courts take the view that, though a statute of this nature may be void and inoperative as a regulation of interstate commerce, it may be valid and enforceable with reference to transportation within the state. In *Commonwealth v. Gagne*, 153 Mass. 205, 10 L. R. A. 442, it is said: "A law which is unconstitutional within certain limitations, if in terms it exceeds or fails to notice those limitations, may yet be entirely operative within its legitimate sphere, and properly held to have the application which thus confines it. Indeed, where two governments, like those of the United States and the commonwealth, exercise their authority within the same territory and over the same citizens, the legislation of that which as to certain subjects is subordinate should be construed with reference to the powers and authority of the superior government, and not be deemed as invading them unless such construction is absolutely demanded. It should be held that such legislation was intended to apply, so far as it was within its sphere, and such construction should be given

it." Illustrative cases in point are *Oliver & Son v. Chicago, R. I. & P. R. Co.,* 89 Ark. 466; *Allen v. Texas & P. R. Co.,* 100 Tex. 525; *Southern R. Co. v. Melton,* 133 Ga. 277, 298; *Standard Oil Co. v. State,* 117 Tenn. 618, 641; *State v. Insurance Co.,* 71 Neb. 320; *McKee v. United States,* 164 U. S. 287; *Packet Co. v. Keokuk,* 95 U. S. 80; *People v. Butler Street Foundry & Iron Co.,* 201 Ill. 236, 249; *Attorney General v. Electric Storage Battery Co.,* 188 Mass. 239; *Murphy v. Wheatley,* 100 Md. 358; *State v. Western Union Telegraph Co.,* 75 Kan. 609, 629.

It is urged that the law places a burden on interstate commerce, and is therefore void because that which the legislature sought to regulate was the rate of movement of freight, and it is impossible to separate interstate and intrastate freight. There are several answers to this contention: First, the evidence is insufficient to show that the imposition of the duty upon the carrier of moving freight within the state a distance of 50 miles within 24 hours is unreasonable as applied to domestic freight, since the act allows a number of defenses to be made if traffic is obstructed or interfered with; second, the rate of movement of freight is not the only purpose of the act; third, the evidence does not establish that if freight within the state is moved at the rate required it will be necessary to unduly delay or hinder interstate transportation. The very fact that both classes of freight are sometimes carried in the same trains would tend to expedite and not to hinder shipments from without the state. Though the testimony is that the average movement of a freight car within the United States is only about 2½ miles a day and the average movement of freight cars upon the line of defendant is only about 24 miles for each 24 hour period, these computations are based upon the use of all freight cars, those standing upon side-tracks, in yards, in storage at division stations, being repaired, and in all other conditions, while the act applies only to freight cars which are in process of transportation, and the facts proved do not necessitate the conclusion urged. *Chicago, R. I. & P. R. Co. v.*

*Beatty,* 34 Okla. 321, 328, 42 L. R. A. n. s. 984, and on rehearing at page 988, in which many cases are cited on both points. We are satisfied that the statute does not operate as a hindrance or burden upon interstate commerce when confined in its operations to shipments from one point to another within the state.

The next assignment is that the court erred in granting a recovery for delay in switching cars which had been held awaiting orders from the consignees. It appears from the testimony that the plaintiff has three yards in different parts of the city; that the sand is usually billed to defendant at Omaha, but not to any particular yard or switch track. When the cars reach Omaha they are placed upon a "hold track" to await order, and reported by defendant to plaintiff's car clerk. As early as practicable after this is done, the clerk telephones the railroad company giving the disposition of each car. This is followed by a written order confirming the instructions. The time which it takes the plaintiff to direct defendant as to the setting of the car after notification that it has arrived in Omaha varies from a few minutes to a few hours, but almost without exception it is upon the same day, unless the car comes in at night. Section 6162, Rev. St. 1913, provides: "Cars for unloading shall be considered placed when they are held awaiting orders from consignors or consignees." Defendant's view of this statute is that as soon as the cars were placed upon the "hold track" to await orders, its liability for delay ceased. The district court took the view that the statute should be construed as if it read: "Provided all cars for unloading shall be considered placed *while* they are held waiting orders from consignors and consignees." The argument of plaintiff's counsel on this point is so apt and convincing that we copy from its brief: "If the duty of the railroad company would end with placing the cars on the 'hold track,' then there would be no delivery at all; and the statute would be meaningless. Cars might be placed on the 'hold tracks' for a day or a week or even a month, and the railroad company refuse to place them at

one of the plaintiff's yards, and the plaintiff would be remediless. The intent and purport of the statute was to give the plaintiff some remedy when the defendant neglected, delayed or refused to place the cars at their destination. If the railroad's construction of this statute is, as they contend, correct, then the whole statute fails in its purpose, for a train of sand is no more available to Sunderland Brothers on the 'hold tracks' of the defendant company than it would be at Louisville. The statute goes to the question of the prompt delivery of the cars at the point where the shipper wants them." We think the district court properly held that cars "held waiting orders" should be considered placed only while they were being so held, and that after orders were received from the consignee specifying the yard in which the cars should be placed the statutory time should again run. To hold otherwise would defeat the very object of the statute, to wit: the prompt delivery of cars after arrival at destination.

Plaintiff has filed a cross-appeal from the findings of the district court. In order to determine exactly the correctness of these findings, it would be necessary to examine the evidence as to the time of loading and of arrival in Omaha of each and every one of over 2,000 cars, and also to examine and determine how long a time each car was "held waiting orders" before delivery at the yards of the consignee. If the record and documentary evidence produced had been examined by disinterested and expert accountants and such experts had testified to the result of their examination, both the district court and this court would have been better able to determine the issues. The argument and briefs have not convinced us that the district court erred in its findings. The finding of the district court in such a case is of the same weight as the verdict of a jury and will not be set aside unless clearly wrong.

AFFIRMED.

ROSE, J., not sitting.