SUNDERLAND BROTHERS COMPANY, APPELLEE, v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, APPELLANT.

FILED MARCH 13, 1920.    No. 20853.

1. **Fines: DEMURRAGE ACT: CONSTITUTIONALITY.** Sections 6159, 6160, and 6162, Rev. St. 1913, which impose liability on railroad companies for actual damages and in addition levy a fine or penalty, to be paid to the injured party, are repugnant to section 5, art. VIII of the Constitution, which requires that all fines and penalties arising under the general laws go exclusively to the school fund.

2. ——: ——: **DAMAGES.** Where a statute imposes liability for actual damages and also imposes additional liability for the same act, such additional liability is a fine or a penalty.

3. **Constitutional Law: DEMURRAGE ACT: DAMAGES.** A statute which provides for more than compensatory or actual damages to be paid to an individual is in excess of legislative authority and is unconstitutional.

4. ——: ——. Where a statute makes a railroad company liable for one dollar per day per car for delay in forwarding, giving notices, or delivery, and in addition thereto imposes liability for actual damages caused by such delay, by necessary implication, is in violation of section 21, art. I of the Constitution.

5. **Eminent Domain.** The legislature cannot appropriate private property to private use.

APPEAL from the district court for Douglas county: CHARLES LESLIE, JUDGE. *Reversed and dismissed.*

*Byron Clark, Jesse L. Root* and *J. W. Weingarten,* for appellant.

*Baldrige & Saxton, contra.*

320        NEBRASKA REPORTS.        [VOL. 104

Sunderland Bros. Co. v. Chicago, B. & Q. R. Co.

ALDRICH, J.

This is an action brought under section 6159-6164, Rev. St. 1913, known as the "Reciprocal Demurrage Act," to recover demurrage alleged to be due from defendant railroad company for delay in forwarding and delivering carloads of sand and stone. These shipments were all intrastate. The court below rendered judgment for plaintiff, and defendant appeals the case to this court.

Section 6159, Rev. St. 1913, provides, among other things: "In less than carloads, not more than one cent per hundred pounds per day or fraction thereof with minimum five cents as damages, together with all other damages the consignor or consignee may sustain thereby." Also section 6160 provides, among other things: "Any railroad company failing to give such notices shall forfeit and pay to the consignee or other party whose interest is affected the sum of one dollar per car per day or fraction of a day's delay on all carload shipments, and one cent per hundred pounds per day or fraction thereof on freight in less than carload lots with minimum charge of five cents per day and not exceeding one dollar per day for any shipment in less than carload, after the expiration of said twenty-four hours, as damages, together with all other damages sustained thereby." Section 6162, provides: "The railroad company shall forfeit and pay to the shipper or consignee one dollar per car per day for each day or fraction thereof such delivery is delayed as damages and all actual damages sustained thereby." These quotations show clearly that the legislature intended to provide for a fine or penalty in addition to compensatory or actual damages, if not a fine or penalty, then for double damages. The sections are clear and unambiguous in their meaning and are subject to no other construction.

An unreasonable regulation which in effect deprives owners of property used in rendering public service, and operates as a limitation upon the rights of those devoting their property to public use and imposes double dam-

ages, a part of which is in the nature of a fine and a part as compensatory damages, constitutes a deprivation of property without due process of law and is a violation of the state Constitution.

A statute which takes property from one individual and gives it to another, not in compensation for any injury sustained, is contrary to the provisions of the Constitution securing property rights of private individuals.

An act of the legislature which provides for double damages comes under the rule in *Atchison & N. R. Co. v. Baty*, 6 Neb. 37, and is unconstitutional.

If this statute under consideration only provided for liquidated damages, we would not hesitate to apply the rules laid down in *Graham v. Kibble*, 9 Neb. 182. In *Clearwater Bank v. Kurkonski*, 45 Neb. 1, the statute permitted a mortgagor to recover $50 as liquidated damages for failing to release a chattel mortgage. We validated that statute. In *Hier v. Hutchings*, 58 Neb. 334, liquidated damages were prescribed by section 361 of the Criminal Code (Rev. St. 1913, sec. 9255), and were held recoverable, and the section held valid.

Where a statute seeks to make a railroad company liable for one dollar per day per car, for delay in forwarding, giving notices, or delivery, and in addition thereto imposes liability for actual damages caused by such delay, the same is repugnant to the state Constitution. If the demurrage is treated as a fine or a penalty, the statute is repugnant to section 5, art. VIII of the Constitution, which provides that all fines and penalties arising under the general laws of this state shall go to the school fund. If treated as liquidated damages, the legislature is acting beyond its authority in seeking to appropriate private property to private use. Under section 21, art. I of the Constitution: "The property of no person shall be taken or damaged for public use without just compensation therefor." In the instant case the railroad company is liable for all actual damages. When

the legislature seeks to impose a greater liability in damages than compensatory damages, it is taking private property for private use, which is unconstitutional.

We are of the opinion that the quotations in the second paragraph of this opinion taken from sections 6159, 6160, 6162, Rev. St. 1913, were inducements for the passage of the particular sections; therefore sections 6159, 6160, 6162, *supra*, are unconstitutional.

The judgment of the district court is reversed and plaintiff's action dismissed.

REVERSED AND DISMISSED.

LETTON and DAY, JJ., not sitting.

The following opinion on motion for rehearing was filed September 27, 1920. *Rehearing denied.*

1. **Fines:** DEMURRAGE ACT: CONSTITUTIONALITY. Sections 6159, 6160, 6162, Rev. St. 1913, which imposed on railroad companies, for delay in shipment and delivery of goods carried, a liability in favor of the shipper for a specified sum in addition to all actual damages suffered by reason of such delay, are unconstitutional under section 5, art. VIII of the Constitution, which provides that all fines and penalties arising under the general laws shall go exclusively to the school fund.

2. **Case Criticised.** The case of *Clearwater Bank v. Kurkonski*, 45 Neb. 1, discussed and criticised.

FLANSBURG, J.

This matter now comes up on rehearing. Former opinion, *Sunderland Bros. Co. v. Chicago, B. & Q. R. Co.*, *ante*, p. 319.

The action was brought by the plaintiff, who had shipped building material in carload lots over defendant's railroad, and is based upon sections 6159, 6160, 6162, Rev. St. 1913, known as the "Reciprocal Demurrage Act," allowing recovery to the shipper of $1 per day, together with all actual damages sustained for each day's delay, in shipment and delivery of goods by the carrier.

The sole question presented is whether or not the provision of the statute, allowing $1 per day per car, to-

gether with all actual damages sustained, provides for liquidated damages to the shipper, or allows a recovery in the nature of a penalty.

If the allowance to the shipper is in the nature of a penalty, then the provision is in violation of section 5, art. VIII of the Constitution, providing: "All fines, penalties, and license moneys, arising under the general laws of the state, shall belong and be paid over to the counties respectively, where the same may be levied or imposed. * * * All such fines, penalties, and license moneys shall be appropriated exclusively to the use and support of the common schools in the respective subdivisions where the same may accrue."

The rule of distinction between penalties and damages is stated in *Haffke v. Coffin*, 89 Neb. 134, 138 (quoting from *Brennan v. Clark*, 29 Neb. 385) as follows: "In construing a contract to determine whether or not a provision therein for the payment of a stipulated sum in case of default by one of the parties is to be considered as a penalty or liquidated damages, the court will consider the subject-matter, the language employed, and the intention of the parties. If the construction is doubtful, the agreement will be considered a penalty merely. If damages result from the performance or omission of acts, which damages are certain or can be ascertained by evidence, the stipulated sum is considered as a penalty; but, where the acts or omissions occasioning damages are not susceptible of measurement by a pecuniary standard, the sum stipulated ordinarily will be regarded as liquidated damages."

That rule has been repeatedly followed by this court and is the rule generally recognized in other states. 17 C. J. 937, sec. 235, 945, sec. 238.

The purpose of liquidated damages is to furnish compensation for an injury sustained, and, if the amount provided does not bear a reasonable relation to the damage which might be contemplated by the parties, or if it is apparent that it was intended to more than cover

that damage, and is not compensatory merely, then it must be construed as a penalty. Such is the holding in *Lee v. Carroll Normal School Co.*, 1 Neb. (Unof.) 681; *Brennan v. Clark*, 29 Neb. 385; *Squires v. Elwood*, 33 Neb. 126.

In the two cases last-above mentioned, the court held that there the damages were easily ascertainable, and the amount provided must have been intended as a penalty, as there was no need for liquidating the amount by agreement.

In the case of *Atchison & N. R. Co. v. Baty*, 6 Neb. 37, and *Grand Island & W. C. R. Co. v. Swinbank*, 51 Neb. 521, a statute, which compels a railroad company to pay the owner of live stock killed upon the track double value of the property, has been held to provide a penalty and to be unconstitutional and void, since it is apparent that more than mere compensation is provided by the statute.

The plaintiff in this case relies upon the holding in *Graham v. Kibble*, 9 Neb. 182, and the cases which have followed that case, citing it as authority. *Phœnix Ins. Co. v. Bohman*, 28 Neb. 251; *Phœnix Ins. Co. v. McEvony*, 52 Neb. 566; and *Hier v. Hutchings*, 58 Neb. 334.

The rule, as stated in the case of *Graham v. Kibble*, *supra*, and as followed in the cases just above cited, is entirely consistent with the rule stated in the beginning of this opinion. In all of these cases statutes were involved which provided that a party could recover from a public officer a certain stipulated amount in damages, in case of the wrongful act or oppression of the officer in charging excessive fees, or in arresting a party who had been released on habeas corpus, etc.

In the case of *Graham v. Kibble, supra,* the amount of damages allowed by statute was $50, in case a public officer should charge excessive fees. It was argued that the statute provided a penalty. The court's decision, however, was based upon the proposition that the amount provided was in the nature of liquidated damages, though a part of the opinion by way of dictum discussed the

amount allowed as a penalty, and intimated that in the case of public officers a penalty could be provided. In the case of *Grand Island & W. C. R. Co. v. Swinbank, supra,* in which the court held that a statute allowing double damages against a railroad company for the killing of live stock was unconstitutional, Judge Irvine said (p. 526): "The so-called penal statute discussed in *Graham v. Kibble, supra,* was sustained as being a provision for liquidated damages. It related to a case where the actual damages are difficult, if not impossible, of ascertainment; whereas the statute we are considering requires the actual damages to be admeasured, and then arbitrarily requires the defendant to pay the plaintiff twice that sum."

By reason of the court's dictum in the case of *Graham v. Kibble,* that the amount allowed was a penalty, such provisions have later been referred to as penalties in the cases following that case. In the case of *Phœnix Ins. Co. v. Bohman, supra,* the court stated that the statute, allowing a party to recover $50 against an officer taking excessive fees, was highly penal in its nature. In that case and in the case of *Phœnix Ins. Co. v. McEvony, supra,* and of *Hier v. Hutchings, supra,* the constitutionality of the statute was not reasoned or discussed, but the statute was sustained simply on the authority of *Graham v. Kibble.* It further appears that those statutes should have been expressly sustained as providing liquidated damages, as was done in the former case.

The cases so far discussed, then, are in complete harmony, so far as the question has been expressly considered, upon the rule of determining between liquidated damages and a penalty. The plaintiff urges that the case of *Clearwater Bank v. Kurkonski,* 45 Neb. 1, is a case in favor of the constitutionality of the statute in question. The statute in that case provided for the recovery of $50 liquidated damages and also for actual damages sustained. It is apparent that the amount allowed, $50, if given in addition to actual damages, was

a provision for more than actual compensation to the person injured, and it would seem that, when that statute comes before the court again, that case must be overruled if the decisions in all the cases above referred to are to be adhered to. In the *Kurkonski* case, the question of allowing extra damages, in addition to the $50, is not discussed as tending to show that any more than compensation was intended to be provided by the statute. The opinion in that case discloses that the question of whether or not the $50 was a penalty was not very closely considered, and it is stated in the opinion that the amount was evidently intended as liquidated damages, and the case of *Graham v. Kibble, supra,* cited as authority.

That the legislature could provide liquidated damages, if it was apparent that the amount provided was intended to be compensatory only, has been held in the case of *Cram v. Chicago, B. & Q. R. Co.,* 84 Neb. 607, 85 Neb. 586. In that case, however, the statute was upheld on the ground that the amount allowed was to cover damages only, and the court stated that, if more than that amount had been allowed, the provisions must have been construed as a penalty.

In the case of *Smith v. Chicago, St. P., M. & O. R. Co.,* 99 Neb. 719, the court, in construing the statute involved in the *Cram* case, said that, though the statute provided for liquidated damages, that remedy was in addition to the common-law remedy, and that the shipper had a right to *elect* and waive the statutory penalty and recover his actual damages as at common law. The reasoning in that case makes it apparent that the court considered both remedies could not be allowed. The decision seems to have gone a great limit, however, in allowing the shipper to elect whether he shall recover his actual damages instead of the liquidated damages provided, if it is understood that such election is given for those damages which arise purely from delay, and not from other acts of the carrier. The very purpose of providing liquidated damages is to reduce the damages,

due to delay, to a definite sum, but, if the purpose is
further to give a specified sum only in those cases where
the actual damages are equal to or are less than the
amount provided by the statute, and to give the shipper
the election to recover all damages and waive the liqui-
dated amount whenever his actual damages amount to
more, then it would seem the statute might, in effect,
allow the shipper to recover more than the compensatory
damages only, for he would obviously seek to recover the
amount fixed by statute when it was to his advantage,
and when he would thus receive more than the actual
damages he had sustained, and, on the other hand, he
would resort to his common-law action for the full
amount of his damages when he could show that the
amount of actual damage was more than that allowed by
statute. The question of election, however, is not in the
case before us, since, by the wording of the statute in
question, no election is provided, but the shipper is ex-
pressly allowed to recover both the stipulated amount
and the actual damages suffered.

It is true that the statute in question was held to be
constitutional in the case of *Sunderland Bros. Co. v.
Missouri P. R. Co.*, 101 Neb. 119, but the only constitu-
tional questions raised in that case were as to whether
or not the statute imposed a burden on interstate com-
merce, and the questions now involved in the instant
case were not raised.

The statute under consideration allows the shipper to
recover both actual damages sustained by him, by reason
of the delay in shipment, and in addition $1 per car for
every day's delay. It is manifest then that the $1 per
car is an amount that much in excess of the actual dam-
ages sustained, and that much in excess of compensation
to the shipper, and must be considered in the nature of a
penalty.

If the legislature had intended that the $1 should cover
liquidated damages for all those injuries sustained by
the shipper, due to the delay in shipment, that would

have been an unjust provision, for in some cases the price of the commodity shipped would not fluctuate in value, and very little damages, if any, would accrue, while as to other commodities the price might fluctuate greatly and delay result in large injuries to the shipper.

In other words, the damages, resulting from delay in the shipment of various commodities, is so variable with regard to the different kinds of commodities to be shipped that the amount of liquidated damages fixed at $1 could not bear any reasonable relation to the damage sustained by the shipment of each of those respective commodities, and the legislature must have intended that, in addition to the $1 to be recovered for delay, the shipper could also recover all of his actual damages sustained by reason of the delay, together with the amount provided.

It is suggested that the rule in the case of *Atchison & N. R. Co. v. Baty, supra,* is out of line with the general holding in other states. We are unable to agree with that conclusion. It is true that in other states penalties have been imposed for a violation of statutory duty, and these penalties have been, in many instances, recoverable by the individual, instead of by the state. Those states, however, do not, so far as our attention has been called, have such a constitutional provision as the one we have in this state, providing that all fines and penalties shall be appropriated exclusively to the use and support of common schools.

The cases in other jurisdictions discuss the validity of penalty statutes, as affected by general constitutional provisions, such as the requirement of due process of law and equal protection of the law, and under those constitutional provisions such penalty statutes are not prohibited.

It is further pointed out that the supreme court of Iowa has held directly contrary to the *Baty* case. *Tredway v. The S. C. & St. P. R. Co.,* 43 Ia. 527. That case holds only that a statute allowing double damages does

not deny equal protection of the laws, and would not therefore be unconstitutional on that ground. The constitutional provision involved here was not involved in the Iowa case, and the *Baty* case was not cited nor referred to.

*Cairo & St. L. R. Co. v. Peoples,* 92 Ill. 97, is cited as holding directly contrary to the *Baty* case. In that case the Illinois court said (p. 102): "The case of *Atchison and Nebraska Railroad Co. v. Baty,* 6 Neb. 37, cited, cannot be regarded as a controlling authority. That case seems to regard 'double damages' for stock killed or injured as purely a penalty, a proposition to which we cannot fully yield our assent. Considering double damages as penalty, the conclusion reached by the court in the case cited was inevitable, as the Constitution of that state, as the opinion declares, provides that 'all fines and penalties * * * shall be appropriated exclusively to the use and support of common schools,' and hence the decision that no private individual could recover the penalty." The court further pointed out that in Illinois there was no such constitutional provision as the one in Nebraska.

It seems clear that our former opinion, holding that the statute provides a penalty, is right, under the numerous decisions of this court, and that the opinion should be adhered to.

The motion for rehearing is therefore

OVERRULED.

ALDRICH, J., not sitting.

LETTON, J., dissenting.

The effect of the majority opinion is to leave the railroad companies free to impose demurrage charges upon the shipper for failing to unload cars seasonably, but to deprive him in many cases of any adequate remedy for the failure of the carriers to perform their duty with respect to the delivery of cars or freight. The act was passed to meet a long-felt defect in the law, and I feel

satisfied it is not in conflict with any provision of the Constitution if properly construed.

The constitutionality of reciprocal demurrage statutes has been assailed in a number of states, and they have generally been upheld, the courts generally holding that the provisions that a reasonable amount be paid by the railroad for failure to furnish or deliver cars, or by a shipper for the undue retention of cars, are reasonable regulations intended to aid the carrier against the undue retention of cars required for other shippers, and to afford the shipper relief against delay in the delivery of freight. *Yazoo & M. V. R. Co. v. Keystone Lumber Co.*, 90 Miss. 391, 13 Ann. Cas. 964, and note; *Patterson v. Missouri P. R. Co.*, 77 Kan. 236, 15 L. R. A. n. s. 733; *Hardwick Farmers Elevator Co. v. Chicago, R. I. & P. R. Co.*, 110 Minn. 25, 19 Ann. Cas. 1088.

The statute is declared unconstitutional on the authority of *Atchison & N. R. Co. v. Baty*, 6 Neb. 37. It was decided in that case that the legislative authority cannot reach the life, liberty, or property of the individual, except he is convicted of a crime, or when the sacrifice of his property is demanded by a just regard for the public welfare; and it is said that the imposition of double damages is a penalty or fine, and that "this penalty or fine is by the statute given to the party claiming damage for the accidental loss of his property, and hence the act must come in conflict with that provision of the Constitution which declares that 'all fines and penalties,' etc., 'shall be appropriated exclusively to the use and support of common schools.'"

This portion of the opinion was overruled very soon after its announcement, and judgments based upon a contrary view have many times been affirmed by this court.

There is now practically no difference of opinion among the leading courts of the country on the main proposition that the state has power to impose a penalty for a violation of a duty imposed by statute, and that

the disposition of the penalty, whether it shall go to the state, or one of its subdivisions, to a private informer, or to the person actually damaged, is entirely within the discretion of the law-making power. In *Missouri P. R. Co. v. Humes,* 115 U. S. 512, 6 Sup. Ct. Rep. 110, which concerned a like statute to that involved in the *Baty* case, the court said: "The power of the state to impose fines and penalties for a violation of its statutory requirements is coeval with government; and the mode in which they shall be enforced, whether at the suit of a private party, or at the suit of the public, and what disposition shall be made of the amounts collected, are merely matters of legislative discretion. The statutes of nearly every state of the Union provide for the increase of damages where the injury complained of results from the neglect of duties imposed for the better security of life and property, and make that increase in many cases double, in some cases treble, and even quadruple the actual damages. And experience favors this legislation as the most efficient mode of preventing, with the least inconvenience, the commission of injuries. The decisions of the highest courts have affirmed the validity of such legislation. The injury actually received is often so small that in many cases no effort would be made by the sufferer to obtain redress, if the private interest were not supported by the imposition of punitive damages." 8 R. C. L. (Damages) 608, sec. 153, 21 R. C. L. (Penalties) p. 206.

The *Humes* case has been repeatedly followed in the federal courts. But the question here is not whether the power to impose a penalty or a fixed sum of damages exists, but whether the penalty, by virtue of the constitutional provision quoted in the opinion, belongs to the common school fund of the state. In the *Baty* case, decided in 1877, this court so held. But in *Graham v. Kibble,* 9 Neb. 182, decided in 1879, the court, after quoting the constitutional provision, and saying it was not intended by this provision to prevent the passage of

such a statute as was involved in that case, which provided that a county officer should forfeit or pay $50 if he exacted illegal fees, said: "It may be true that such statutory allowance is much in excess of the actual loss sustained or injury done, and therefore, to the extent that it is so in its effect upon the offending officer, *is in the nature of a penalty.* But the power of the legislature to fix the maximum, or even the exact amount recoverable by a private person sustaining injury, or that shall accrue to the public in case of official delinquency, *cannot be successfully questioned.* * * * This section of the Constitution, as we understand it, *has no reference whatever to those damages, whether limited in the amount recoverable or not,* which a private person may sustain, but solely to such as, under the law of the land, are given to the public and go into the public treasury. Its object doubtless was to correct what were considered abuses in the disposition of public moneys realized from the several sources therein mentioned, and to insure their proper expenditure in the future. Its evident scope is to give direction to the distribution of particular funds belonging, under the law, to the public at large or to a particular subdivision thereof, and thereby insure an equitable distribution, viz., to the particular subdivision of the public upon whom rests the chief responsibility and expense of enforcing the criminal laws and police regulations of the people. We are aware that this view of this provision conflicts with an expression in the opinion of this court in *Atchison & N. R. Co. v. Baty,* 6 Neb. 37. To the extent, however, that it does, the law of that case should be modified."

*Graham v. Kibble* was followed in *Deering & Co. v. Miller,* 33 Neb. 654; *Clearwater Bank v. Kurkonski,* 45 Neb. 1; *Phœnix Ins. Co. v. McEvony,* 52 Neb. 566; *Hier v. Hutchings,* 58 Neb. 334; *Cram v. Chicago, B. & Q. R. Co.,* 84 Neb. 607; and *Smith v. Chicago, St. P., M. & O. R. Co.,* 99 Neb. 719. In *Everson v. State,* 66 Neb. 154, the provision of the Criminal Code providing that, in

entering a judgment on conviction of embezzlement, the convict shall pay a fine equal to double the amount embezzled, which fine shall operate as a judgment at law for the use of the party whose money or property has been embezzled, was upheld against the same objections as are made in this case. In *Grand Island & W. C. R. Co. v. Swinbank*, 51 Neb. 521, the decision as to double damages was followed, but it was recognized that the point that such penalties belong to the school fund had been disapproved. The *Cram* case was upheld on this point by the supreme court of the United States in *Chicago, B. & Q. R. Co. v. Cram*, 228 U. S. 70, 33 Sup. Ct. Rep. 437.

A like construction has been given to similar provisions in the constitutions of other states.

In Indiana a statute provided a penalty of $100 for the failure to transmit telegraph messages as therein provided, to be recovered by the party aggrieved in a civil action. In *Western Union Telegraph Co. v. Ferguson*, 157 Ind. 37, the statute was assailed because the Constitution gave all fines and forfeitures to the school funds of the state. The court said, among other things: "The first objection has been held to be ill-founded in *Burgh v. State*, 108 Ind. 132; *Toledo, St. L. & K. C. R. Co. v. Stephenson*, 131 Ind. 203; *State v. Indiana & I. S. R. Co.*, 133 Ind. 69, 18 L. R. A. 502; and *Judy v. Thompson*, 156 Ind. 533. * * * The giving to an aggrieved party a civil right of action for fixed punitive damages against administrators for malfeasance, against public officers for extortion, against mortgagees for failing after demand to release mortgages on the public records, against telegraph companies for violation of statutory duties, and the like, does not deprive the school fund 'of any of its sources of revenue."

In North Carolina the statute provided that a railroad company that allowed freight to remain unshipped for more than five days shall forfeit and pay the sum of $25 each day said freight remains unshipped to any person

suing for same. In passing upon the argument that the
statute was void because by the Constitution all penalties
and forfeitures belonged to the school fund, the court
said: "There is a distinction between those penalties that
accrue to the state, and those that are given to the per-
son aggrieved, or such as may sue for the same, and no
doubt this distinction was in the contemplation of the
framers of the Constitution when they adopted that sec-
tion. * * * If the penalty sought to be recovered in
this action belongs to the county school fund, then all
penalties must go the same way, and hereafter, the plain-
tiff who amerces a sheriff in the sum of one hundred dol-
lars for not serving his process, will collect it for the
benefit of the school fund of his county. That cannot be
the meaning of the Constitution." *Katzenstein v. Ra-*
*leigh & G. R. Co.,* 84 N. Car. 688, 693. See, also, *Branch*
*v. Wilmington & W. R. Co.,* 77 N. Car. 347; *Keeter v.*
*Wilmington & W. R. Co.,* 86 N. Car. 346; *Whitehead &*
*Stokes v. Wilmington & W. R. Co.,* 87 N. Car. 255; *Mc-*
*Gowan v. Wilmington & W. R. Co.,* 95 N. Car. 417; *Mc-*
*Gwigan v. Wilmington & W. R. Co.,* 95 N. Car. 428;
*Williams v. Hodges,* 101 N. Car. 300; *Cole. v. Laws,* 104
N. Car. 651.

In Missouri, under similar constitutional provisions
for double damages, it was held that "both of these pro-
visions refer only to such fines, penalties, and forfeitures
as the legislature might provide should accrue to the
state." The opinion says this section clearly refers to
penalties accruing to the public, and not to penalties re-
covered by private persons for their own use. *Barnett v.*
*Atlantic & P. R. Co.,* 68 Mo. 56; *State v. Wabash, St. L.*
*& P. R. Co.,* 89 Mo. 562.

The statute here is declared void because it provides
for both actual damages and a fixed sum as a penalty.
No statute should be declared void, if a reasonable con-
struction will make it valid.

Even if the court adheres to the main point decided in
the *Baty* case, which I am convinced was erroneous, in

the *Kurkonski* case, in *Deering & Co. v. Miller, supra,* and in *Smith v. Chicago, St. P., M. & O. R. Co.,* 99 Neb. 719, we held that the action must be either for the actual damages, or for the penalty or liquidated damages provided for by the statute, and it is generally held that, where the same facts that would make out a case for damages under the statute would also establish a case for damages at common law, the petition should show in some form that the action is based upon the statute; otherwise, it will be treated as a common-law action. *Montgomery v. Edwards,* 45 Vt. 75; 17 C. J. 1007, sec. 310, note 15.

I feel satisfied that there is no constitutional provision which prevents the legislature from imposing a reasonable penalty for the violation of a statute regulating common carriers, and providing that the proceeds of the penalty may go to the party injured.