CHARLES W. COLEMAN, widower of Sarah A. Coleman, *v.* MARY S. RHODES.

(*April* 11, 1932.)

PENNEWLL, C. J., HARRINGTON and RICHARDS, J. J., sitting.

*W. Thomas Knowles* for plaintiff.

*Clarence A. Southerland* (of Ward and Gray) for defendant.

Superior Court for New Castle County, Summons Case, No. 269, September Term, 1931.

PENNEWILL, C. J., delivering the opinion of the Court:

The plaintiff's declaration consists of four counts, the first three charging the defendant with the negligent operation of a motor vehicle, which resulted in the death of said Sarah A. Coleman while riding as a nonpaying passenger in the automobile owned by the defendant.

The fourth count differs from the first three in this: that it charges wilful and intentional negligence on the part of the defendant.

The defendant has pleaded to this count, and demurred to the others on the ground that they are not good in law to sustain the plaintiff's right of action because of a statute of this state, *Volume* 36, *Delaware Laws, Chapter* 270, § 1, which provides:

"That the operator or owner of a motor vehicle shall be relieved from any liability whatsoever for injuries suffered or sustained by any person while riding with said operator or in said owner's car free of charge."

The sole question to be determined in this case is whether the statute referred to is constitutional. Was it a valid exercise of legislative power?

The case was argued by both sides on the assumption that the Legislature had the power to relieve the operator or owner of a motor vehicle from any liability for injuries to a non-paying passenger caused by ordinary negligence. But it is claimed by the plaintiff, and not denied by the defendant, that the Legislature was without power to relieve such operator or owner from all liability for injuries to a non-paying passenger. The plaintiff contends, that while the operator or owner of a motor vehicle may be relieved by legislative act from liability for injuries to a non-paying passenger caused by ordinary negligence, he cannot be relieved from liability for injuries caused by wilful or gross negligence.

This distinction is recognized in a Connecticut statute which is similar to ours except that it preserves liability

where the accident was intentional on the part of the owner or operator, or caused by his heedlessness, or his reckless disregard of the rights of others.

The Connecticut statute was held to be constitutional by the Supreme Court of that state in the case of *Silver v. Silver,* 108 *Conn.* 371, 143 *A.* 240, 242, 65 *A. L. R.* 943. It was held that it did not deny to guests in motor vehicles the equal protection of the laws or violate any constitutional guarantee, but was proper legislation under the police power of the state.

The Court said:

"Legislation under the police power of the state is not confined to public health, safety, or morality, but may extend to matters in the interest of the public welfare or convenience. * * * A large discretion is necessarily vested in the Legislature to determine, not only what the interests of public convenience and welfare require, but what measures are necessary to secure such interests. * * * The legislative department is the judge, within reasonable limits, to determine what public convenience and public welfare require, and the wisdom of its legislation is not the concern of the courts. It is our duty to sustain an act unless its invalidity is in our judgment beyond a reasonable doubt. * * * That the state may under the police power regulate travel upon the public highways cannot be doubted. * * * This includes the power to regulate the use of motor vehicles. * * * 'That the regulation of motor vehicles and motor vehicle traffic is a proper subject for legislative action under the police power is not questioned.' * * * Ever since motor vehicles have come into general use they have been classified separately from horse-drawn vehicles and the power of the Legislature to impose upon their owners and operators duties not placed upon others has been generally upheld."

On appeal to the United States Supreme Court, 280 *U. S.* 117, 50 *S. Ct.* 57, 59, 74 *L. Ed.* 221, the decision of the Connecticut Court was sustained in an opinion which said in part:

"Granted that the liability to be imposed upon those who operate any kind of vehicle for the benefit of a mere guest or licensee is an appropriate subject of legislative restriction, there is no constitutional requirement that a regulation, in other respects permissible, must reach every class to which it might be applied—that the Legislature must be held rigidly to the choice of regulating all or none. * * * In this day of almost universal highway transportation by motorcar, we cannot say that abuses originating in the multiplicity of suits growing out of the gratuitous carriage of passengers in automobiles

do not present so conspicuous an example of what the Legislature may regard as an evil, as to justify legislation aimed at it, even though some abuses may not be hit. * * * It is enough that the present statute strikes at the evil where it is felt and reaches the class of cases where it most frequently occurs."

The *Silver Case* has been followed in other Connecticut cases.

As before stated, this case has been argued on the assumption that the Legislature had the right to relieve the owner or operator of a motor vehicle from any liability for injuries to a non-paying passenger caused by ordinary negligence, but not for wilful or gross negligence. For the purposes of this case the defendant concedes the soundness of the proposition, that while the Legislature may restrict or modify the liability, it cannot extinguish the right entirely. It cannot relieve the owner or operator from the consequences of negligence that is intentional or wilful or that is so gross as to amount to a reckless disregard of the rights of others.

In the case of *Stewart v. Houk, et al.,* 127 *Or.* 589, 271 *P.* 998, 272 *P.* 893, 61 *A. L. R.* 1236, the Supreme Court of Oregon held a statute similar to ours unconstitutional because it was violative of constitutional guarantees. The Court based its decision upon the statute as a whole. This is apparent from the Court's opinion delivered after an application for a rehearing of the case. The Court differentiated its case from the Connecticut case of *Silver v. Silver,* saying:

"In that case a statute, which released a voluntary host from liability for the injury of a guest, was assailed as invalid, on the ground that it was in conflict with the constitutional provision, which guarantees equal protection of the laws. It preserved liability in those instances where the 'accident shall have been intentional on the part of said owner or operator or caused by his heedlessness or his reckless disregard of the rights of others.' * * * The court interpreted the act as freeing the host from liability to a non-paying guest for injury caused by ordinary negligence only. Disposing of the specific attack made upon the act, the court held that it was proper for the Legislature to segregate into one class the guest in an automobile as distinguished from all other guests. Since the act preserved liability in instances where the injury was inflicted inten-

tionally, heedlessly, or through reckless disregard for the rights of others, and withheld liability only to a nonpaying guest for ordinary negligence, the court reasoned that the purpose of the act was to fix the measure of care a host owed to his guest. After observing that the police power of the state is broad enough to include the regulation of automobiles driven upon the public highways, it sustained the validity of the act as a proper exercise of the state's police power. * * * No contention, apparently, was advanced in the Connecticut court that the act violated this constitutional guaranty, and the decision makes no mention of that clause. The reason for this silence, no doubt, lies in the fact that, since the Connecticut act prescribes a degree of care which was deemed reasonable, and thus accomplishes an objective, within the police power of the state, *Article* 1, § 12,—was inapplicable. * * * In our case, the act does not endeavor to readjust the duty, but attempts to abolish the remedy; in the Connecticut case, the act revised the duty, and afforded redress to all injured through a breach thereof.

"We find no conflict between the Connecticut decision and the one we previously announced."

The defendant relies very largely on two well settled rules of law:

██ ██ 1. That the statute must be held valid if it is possible for the Court to do so; that every presumption must be resolved in favor of its validity, and it should not be declared unconstitutional unless the Court is convinced of that fact beyond a reasonable doubt.

██ ██ 2. That the intention of the Legislature must control, if it can be ascertained from the language of the act unless it is obnoxious to some constitutional provision. With the wisdom of the object the Legislature seeks to accomplish the Court should not be concerned.

There is no doubt about the general principles that apply when the validity of a statute is involved, but there is great difficulty in the application of such principles in some cases.

██ Another principle of law well settled in statutory construction is this—that where the act attempts to accomplish two objects, apparent on its face, one of which the Legislature had the power to accomplish and the other not, the act will be held constitutional as to that part which the

Legislature had the power to enact, unless it appears that the Legislature did not intend that it should be operative in part only.

In *Mayor and Council of Wilmington v. Ewing,* 2 *Penn.* 66, 43 *A.* 305, the Supreme Court of this state had to pass upon the constitutionality of a statute that relieved the city from liability for injuries caused by defective sidewalks and imposed the liability on the adjoining property owner. There were two objects disclosed, the one separable from the other, and the Court held that the statute was valid in relieving the city, even though it might be invalid in imposing the burden on the owner.

We need not cite other authorities on the point, because, as we have said, the law is too well settled to be controverted.

But the statute that this Court is required to construe is not one where it appears that two, objects are attempted to be accomplished. No act could be more general upon its face, or disclose more clearly a purpose to accomplish one object, viz.: to relieve the owner or operator of a motor vehicle from any liability whatsoever for injuries to a non-paying passenger. That includes, of course, injuries caused by wilful and gross negligence as well as by ordinary negligence.

The Court may assume, for the purposes of this case, that our statute is, upon its face, unconstitutional because it seeks to do something the Legislature was without power to do. But the Legislature had power to do a part of that it sought to do. It could relieve the owner or operator from liability for injury caused by ordinary negligence. Is such negligence separable, under the language of the act, from other negligence so that the Court can say the act is valid insofar as it includes ordinary negligence although unconstitutional as to other negligence? That is the case before us.

We have seen no clearer discussion of the subject now

under consideration than that found in an opinion of the United States Circuit Court, delivered in the case of *C., M. & St. P. Ry. Co. v. Westby*, 178 *F.* 619, 629, 47 *L. R. A.* (*N. S.*) 97, and adopted in *Cooley's Constitutional Limitations* (8*th Ed.*), *Chapter VII, in note at* 364. In that case the Court held:

"The test to be applied in determining whether the unconstitutional provision in a statute invalidates the whole enactment is the answer to the following questions:

"(1) Are the constitutional and the unconstitutional parts capable of separation so that each may be read and may stand by itself?

"(2) Is the unconstitutional part so connected with the general scope of the whole as to make it impossible to give effect to the apparent intention of the legislature if the clause or part is stricken out?

"(3) Is the insertion of words or terms necessary in order to separate the constitutional part from the unconstitutional part and give effect to the former only?"

Many cases and texts might be cited but they would be found to recognize, in varying language, the same test, and we think it unnecessary to burden the opinion with numerous quotations or citations on this point.

We will, however, refer at some length to two other leading cases. In *United States v. Reese*, 92 *U. S.* 214, 221, 223, 23 *L. Ed.* 563, the Court said:

"We are, therefore, directly called upon to decide whether a penal statute * * * which is in general language broad enough to cover wrongful acts without as well as within the constitutional jurisdiction, can be limited by judicial construction so as to make it operate only on that which Congress may rightfully prohibit and punish. For this purpose, we must take these sections of the statute as they are. We are not able to reject a part which is unconstitutional and retain the remainder, because it is not possible to separate that which is unconstitutional, if there be any such, from that which is not. The proposed effect is not to be attained by striking out or disregarding words that are in the section, but by inserting those that are not now there. Each of the sections must stand as a whole, or fall altogether. The language is plain. There is no room for construction, unless it be as to the effect of the Constitution. The question, then, to be determined, is, whether we can introduce words of limitation into a penal statute so as to make it specific, when, as expressed, it is general only?"

It is true that the statute construed in that case was

a penal one, but the reasoning would seem to be equally applicable to any act in similar language.

There are many cases cited and commented upon in the *Westby Case* besides the *Reese Case*.

In *Trade-Mark Cases,* 100 *U. S.* 82, 25 *L. Ed.* 550, Congress possessed constitutional authority to protect trade-marks in interstate and foreign commerce and enacted a statute which by its terms protected trade-marks in all commerce. The Court was urged to restrict this law by construction to trade-marks in interstate and foreign commerce and to sustain it to that extent. But it cited the opinion in the *Reese Case,* and held the act unconstitutional.

Perhaps the most thorough treatment of the subject is contained in the arguments of counsel and the opinion of the Court in the case of *Ballard v. Mississippi Cotton Oil Co.,* decided by the Supreme Court of that state and reported in 81 *Miss.* 507, 34 *So.* 533, 554, 62 *L. R. A.* 407, 95 *Am. St. Rep.* 476.

While the decision follows the *Reese Case,* the opinion discusses at considerable length the difference between the severance of a statute and the judicial limitations of a statute; and in this way explains the action of state Courts, in many cases, in which statutes, general in language, were held constitutional in part and unconstitutional in part.

We quote from the opinion the following:

"But, with all deference, it is impossible for us to regard any of these decisions as sound on this point. The court did not, in those cases, sever the statute, so as to divide constitutional provisions from unconstitutional provisions. * * * The act of the court was an alleged judicial limitation of general words in a statute, by the evidence in each case, so as to hold one employee within, and another employee without, such general words. Limitation, by judicial construction is not severance of a statute. Severance of a statute takes place only where both sets of provisions, constitutional and unconstitutional, appear upon the face of the statute itself, and the court separates, if the provisions are not interdependent, the constitutional from the unconstitutional. * * * But where, as in all these cases, there are just two general words, 'any employee,' what this court does is simply to look to the evidence in each case, and from that evidence determine, not from the provisions on the face of the statute, whether

the particular employee is, or is not, the kind of employee falling within the supposed, not the declared, intent of the act. * * * We think it is judicial legislation. * * * Judicial legislation as we conceive it—is never permissible. * * * But wherever a court, in order to uphold the provisions of a statute as constitutional, has to interpolate in such statute provisions not put there by the Legislature, in order, by such interpolation, to make the provision which the Legislature did put there constitutional, this is no case of severance, in any proper legal sense."

In addition to the *Reese Case,* the Court refers particularly to *Baldwin v. Franks,* 120 *U. S.* 685-690, 7 *S. Ct.* 656, 763, 32 *L. Ed.* 766, and to *U. S. v. Harris,* 106 *U. S.* 629, 1 *S. Ct.* 601, 27 *L. Ed.* 290.

To sustain the contention that the statute in question may be declared constitutional in part, although unconstitutional in part, the defendant cites the following cases: *Mayor & Council of Wilmington v. Ewing,* 2 *Penn.* 66, 43 *A.* 305; *McDonald v. City of Spring Valley,* 285 *Ill.* 52, 120 *N. E.* 476, 477, 2 *A. L. R.* 1359; *Randolph v. Springfield,* 302 *Mo.* 33, 257 *S. W.* 449, 31 *A. L. R.* 612; *Ratterman v. W. U. Tel. Co.,* 127 *U. S.* 411, 8 *S. Ct.* 1127, 1130, 32 *L. Ed.* 229; *Singer S. M. Co. v. Brickell,* 233 *U. S.* 304, 34 *S. Ct.* 493, 496, 58 *L. Ed.* 974; *People v. Ringe,* 197 *N. Y.* 143, 90 *N. E.* 451, 27 *L. R. A.* (*N. S.*) 528, 18 *Ann. Cas.* 474; *Chesebrough v. City of San Francisco,* 153 *Cal.* 559, 96 *P.* 288; *In re Opinion of the Justices,* 41 *N. H.* 554; *Commonwealth v. Gagne,* 153 *Mass.* 205, 26 *N. E.* 449, 450, 10 *L. R. A.* 442; *People v. Gould,* 345 *Ill.* 288, 178 *N. E.* 133; *State v. Martin,* 210 *Iowa* 207, 230 *N. W.* 540; *Sunderland Bros. Co. v. Mo. Pac. Ry. Co.,* 101 *Neb.* 119, 162 *N. W.* 494, 495, *Ann. Cas.* 1918*D,* 1120.

Some of these cases are distinguishable from the one before us, and others are cases in which, as was said in *Ballard v. Miss. Cotton Oil Co., supra,*

"* * * The court simply looks to evidence in each case, and from that evidence determines, not from the provisions on the face of the statute, whether the particular employee is, or is not, the kind of employee falling within the supposed, not the declared, intent of the act."

In the majority of defendant's cases it was the presumed intention of the Legislature upon which the Court acted; and in none of them, we think, could that intention be ascertained from the language of the statute.

The *Spring Valley Case* and the *Springfield Case* were similar in this: The statute required that certain notice be given by the injured person respecting his injury. The Court said in the first case:

"Statutes general in their terms are frequently construed to contain exceptions, when considered in connection with well-known rules of law, without the courts being subjected to the criticism of having entered the legislative field. This is done upon the theory that statutes, though general in their terms, have been enacted with the full recognition of rules of law which have become well known and well established."

In that case the person injured was an infant, and in the *Springfield Case* the injured person was in such condition because of his injury he could not give the required notice.

Because of the incapacity or inability of the injured party to give the statutory notice the Court held that such cases were not intended by the Legislature to be covered by the statute, because the Legislature must have known, under well settled rules of law, that such injured person could not comply with this requirement of the Act. The decision of the Court was not a construction of the words of the statute, but a declaration of legislative intent based on principles of law that the Legislature must be presumed to have known, and because of which it could not have intended that notice should be given in every case. Such cases were regarded as exceptions to the statute. We think that in most cases in which it has been held that a statute, general in its terms, can be sustained in part, the Court was influenced by the same principle as declared in the *Spring Valley Case*—the intention of the Legislature in view of rules of law generally known.

In the *Western Union Telegraph Co. Case,* the Legisla-

ture of Ohio had passed an act imposing a tax upon the receipts of a telegraph company. The Court held the act invalid as to receipts derived from interstate commerce, and valid as to receipts from intra-state commerce, saying:

"Where the subjects of taxation can be separated so that that which arises from interstate commerce can be distinguished from that which arises from commerce wholly within the state, the court will act upon this distinction."

The Court, in its opinion in the *Singer Sewing Machine Co. Case,* which also involved the taxing power, distinguished that case from the *Trade Mark Cases, supra,* saying:

"The statute now under consideration differs materially, in that it deals separately with the business as conducted in each county of the state, and provides for separate taxes to be laid for each county."

The case of *Mayor & Council v. Ewing, supra,* has already been referred to, and distinguished from the present one on the ground that in the statute there involved, two objects were clearly expressed.

In the *Opinion of the Justices,* 41 *N. H.* 555, it was said:

"The rule of construction universally adopted is, that when a statute may constitutionally operate upon certain persons, or in certain cases, and was not evidently intended to conflict with the Constitution, it is not to be held unconstitutional merely because there may be persons to whom, or cases in which it cannot constitutionally apply."

At the time the New Hampshire statute was passed it was a well known fact that there was a class of persons upon whom it could not operate.

The same comment may be made upon *Commonwealth v. Gagne,* in which a similar rule of construction was applied.

The law was well settled, that a state could not forbid the importation of intoxicating liquor in original packages from other states. The Massachusetts Court said:

"The legislative intent was to enact a statute consistent with its powers under the constitution of the United States, and it should be construed in this aspect."

The remaining cases relied on by the defendant were those in which a state statute, in terms, covered business both intra-state and interstate, and was held to be inoperative as to that part which was in excess of the legislature power. We have already commented on similar cases.

We think a careful examination of the cases in which a statute general in its terms has been sustained in part, will show that there were two objects expressed, or the Legislature could be presumed to know that the act proposed would be unconstitutional in part, and was, therefore, not intended to be operative in that regard. It was the intention of the Legislature that controlled, and the intention was presumed from the fact that the Legislature must have known that its action would be unconstitutional in part. In the *Singer Sewing Machine Co. Case, supra,* the Court said:

"Full and fair effect can be given to its provisions, and an unconstitutional meaning can be avoided, by indulging the natural presumption that the legislature was intending to tax only that which it constitutionally might tax. So construed, it does not apply to interstate commerce at all."

There can be no such presumption indulged in the present case. We cannot assume that the Legislature knew the statute it passed would be invalid insofar as it covered wilful or gross negligence, and was not intended to be operative as to such negligence. At the time the act was passed there had been no decision or opinion given anywhere, so far as we know, to the effect that such a statute as ours would be constitutional in part and unconstitutional in part.

There had been but one court decision based upon a similar statute, and that was by the Oregon Court in the case of *Stewart v. Houk, supra,* in which the statute was held entirely unconstitutional. It is true that the question, whether the act might be held valid in part was not passed on in that case. It was not suggested by counsel or Court. The case was ably tried, and it is reasonable to believe that such question would have been presented if it was thought

that such an act could be constitutional in part. At the argument upon a motion for a rehearing of the case, in which the Connecticut case, *Silver v. Silver, supra,* was cited and carefully considered, the Court adhered to its decision holding the act wholly unconstitutional. The Oregon Legislature subsequently passed an act similar to the Connecticut statute.

The defendant has called the Court's attention to the fact that a number of states, including Michigan, Iowa, California, Minnesota and Massachusetts have enacted statutes modeled after the Connecticut act. But this only shows that those states did not follow the Oregon act (similar to ours) which was declared unconstitutional.

If the Delaware Legislature was aware of the action of those states, it is reasonable to believe it would not have passed the statute in question unless it was its intention to go further and cover all negligence whatsoever.

In sustaining an act of the Legislature some courts have said, it must be presumed that the Legislature did not intend to violate the Constitution, and that the Legislature is mindful of its constitutional limitations. It must be conceded that the Legislature does not intend to pass an unconstitutional act, but that fact alone does not seem sufficient to warrant the conclusion that a statute, general in its terms, and invalid on its face, is constitutional in part.

The Courts have gone far in seeking to discover the legislative intent that prompted the act, and rightfully so, because it is universally conceded that the act should be sustained if reasonably possible. The intention, when ascertained, should control, but it must not be conjectured, nor presumed from something other than the act or something outside the act, which is at variance with the language of the act.

There can be no doubt about the intent of the act before us; it is general in its terms, expresses but one subject, and the part claimed to be constitutional cannot be

separated from the part admitted to be unconstitutional without interpolating words not in the act. In this case we have no means of ascertaining the legislative intent except the language of the statute. To hold it constitutional in part by severing the good from the bad, when not warranted by its language, would, in our opinion, be sustaining it by judicial legislation, and surely that is never permissible. We conceive it to be the duty of the Court to construe the statute according to its language and manifest intent, and not according to what the Court might think the Legislature should have done, or had power to do.

Realizing that it is the duty of the Court in every case to uphold a legislative act if it is possible to do so, and knowing that the Courts of this state have been zealous in the performance of that duty, we have sought diligently to find a sufficient legal reason for sustaining the constitutionality of the Delaware statute, but have not been able to do so.

While we regret this conclusion, the regret is mitigated to some extent by the fact, that at the next session of the Legislature there will be an opportunity to pass an act covering ordinary negligence only.

Defendant's demurrer will be sustained.