TRACY SIDLE *v*. WILLIAM C. MAJORS.
JOE DEMPSEY *v*. DIANA LEONHERDT (Green).

[Nos. 275S42, 475S96. Filed February 16, 1976. Rehearing denied April 2, 1976.]

*Ronald K. Gehring, Tourkow, Danehy, Crell, Hood & Gehring,* of Fort Wayne, *Theodore Lockyear,* of Evansville, for appellant Sidle.

*Robert H. Hahn, George A. Porch,* of Evansville, *Rodney H. Grove,* of Evansville, *Bamberger, Foreman, Oswald and Hahn,* of counsel, of Evansville, for appellee Majors.

*Samuel J. Bernardi, Jr., John P. McQuillan, Spangler, Jennings, Spangler and Dougherty,* of counsel, of Valparaiso, for appellant Dempsey.

*Stephen H. Meyer, Byron M. Chudom, Chudom & Pressler,* of counsel, of Schererville, for appellee Leonherdt.

PRENTICE, J.—Plaintiff (Appellant) was injured while a guest passenger in an automobile operated by Defendant (Appellee). She filed a two-count complaint for damages in the United States District Court for the Southern District of Indiana, alleging "negligence" in Count I and "wanton and wilful misconduct" in Count II. The District Court sustained the defendant's motion for summary judgment on Count I, in view of the guest statute. Final judgment was entered against the plaintiff on that count.

On appeal to the United States Court of Appeals for the Seventh Circuit, Plaintiff has challenged the constitutionality of the Indiana Guest Statute, asserting that it violates Article 1, §§ 12[1] and 23[2] of the Indiana Constitution and the equal protection clause of the Fourteenth Amendment to the Constitution of the United States.[3]

---

1. All courts shall be open; and every man, for injury done to him in his person, property, or reputation, shall have remedy by due course of law. Justice shall be administered freely, and without purchase; completely, and without denial; speedily, and without delay.
2. The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens.
3. § 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States

There being no precedents in the decisions of this Court upon such questions, the United States Court of Appeals has, pursuant to our Ind. R. Ap. P. 15 (N), certified the following questions to us and has requested our instructions thereon. .

"1. Does the Indiana Guest Statute contravene Article 1, Section 12 of the Indiana Constitution?
"2. Does said Act contravene Article 1, Section 23 of the Indiana Constitution?"

Plaintiff (Appellee) was a guest passenger in the automobile operated by the defendant (appellant) as a consequence of having accepted his social invitation. While so engaged, the parties were involved in a one-automobile accident, alleged by Plaintiff to have been proximately caused by the defendant's negligent and wilful and wanton operation of the vehicle. Prior to commencement of the trial, the trial court entered a ruling declaring the Indiana Guest Statute[4] unconstitutional as violative of the equal protection clauses of the United States and Indiana Constitutions. The plaintiff, however, attacks it upon other constitutional grounds as well, including the "due course of law" provision of Article 1 § 12 of our state constitution.

## STANDARD OF REVIEW AND BURDEN

In approaching a consideration of the constitutionality of a statute, we must at all times exercise self restraint. Otherwise, under the guise of limiting the Legislature to its constitutional bounds, we are likely to exceed our own. That we have the last word only renders such

and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

4. Ind. Code § 9-3-3-1 (Burns 1973) provides: The owner, operator, or person responsible for the operation of a motor vehicle shall not be liable for loss or damage arising from injuries to or death of a guest, while being transported without payment therefor, in or upon such motor vehicle, resulting from the operation thereof, unless such injuries or death are caused by the wanton or wilful misconduct of such operator, owner, or person responsible for the operation of such motor vehicle.

restraint the more compelling. We, therefore, remind ourselves that in our role as guardian of the constitution, we are nevertheless a court and not a "supreme legislature." We have no right to substitute our convictions as to the desirability or wisdom of legislation for those of our elected representatives. We are under a constitutional mandate to limit the General Assembly to its lawful territory of prohibiting legislation which, although enacted under the claim of a valid exercise of the police power, is unreasonable and oppressive. Nevertheless, we recognize that the Legislature is vested with a wide latitude of discretion in determining public policy. Therefore, every statute stands before us clothed with the presumption of constitutionality, and such presumption continues until clearly overcome by a showing to the contrary.

In the deliberative process, the burden is upon the challenger to overcome such presumption, and all doubts are resolved against his charge. The plaintiff, Leonherdt (Green), would avoid the application of the aforementioned standards and shift the burden that we believe is hers by charging that the right to bring an action for common law negligence is "fundamental" and that the burden is therefore upon the proponent of constitutionality to show a compelling state interest justifying the legislative classification. We reject this proposition.

Both this Court and the United States Supreme Court have upheld the right of states to abolish or modify the common law. *Liberty Warehouse Co.* v. *Burley Tobacco Growers' Co-op. Marketing Association*, (1928) 276 U.S. 71, 48 S.Ct. 291, 72 L.Ed. 473; *Brooks* v. *Robinson*, (1972) 259 Ind. 16, 284 N.E.2d 794; *Bissell Carpet Sweeper Co.* v. *Shane Co.*, (1957) 237 Ind. 188, 143 N.E.2d 415. It is only required that the manner and effect of abolition not violate any relevant constitutional constraints. *Chaffin* v. *Nicosia*, (1974) 261 Ind. 698, 701, 310 N.E.2d 867, 869. Fundamental rights are those which have their origin in the express terms of the constitution or which are necessarily to

be implied from those terms. *San Antonio Indep. School Dist.* v. *Rodriquez,* (1973) 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16. The right asserted by the plaintiff is not such a right.

Within the context of these cases, at least, we see no differences in the equal protection provisions of the state and federal constitutions. Both are designed to prevent the distribution of extraordinary benefits or burdens to any group. However, the power to establish legislative classifications of persons has not been categorically denied but only severely limited. Rather, our courts have required only that such classifications meet certain tests. If neither a fundamental right nor a suspect classification is involved, the standard of review is that the classification not be arbitrary or unreasonable. *Dandridge* v. *Williams,* (1970) 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491, and that a "fair and substantial" relationship exist between the classification and the purpose of the legislation creating it. *Johnson* v. *Robinson,* (1974) 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389; *Reed* v. *Reed,* (1971) 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225; *Royster Guano Co.* v. *Virginia,* (1920) 253 U.S. 412, 40 S.Ct. 560, 64 L.Ed. 989. See aso *Gunther, The Supreme Court,* 1971 Term, Forward: In Search of Evolving Doctrines of a Changing Court: A Model For a Newer Equal Protection, 86 Harv. L. Rev. 1 (1972).

Our guest statute precludes a guest passenger from recovering damages for personal injuries sustained merely by the negligence of the owner or operator. Being inoperative as to passengers who were not guests, the statute creates two classifications of passengers— guests and non-guests, who are treated vastly differently under circumstances that are otherwise identical. The inequity is patent. The issues are whether or not the classification is reasonable and bears a fair and substantial relation to the legitimate purpose of the statute. The presumptions are that

it is and does, and the burden is upon the plaintiff to show the contrary.

\* \* \*

## DEMPSEY v. LEONHERDT (GREEN)

We shall proceed to a consideration of *Dempsey* v. *Green,* and our determination thereof will control our response to the questions certified to us in *Sidle* v. *Majors.*

Approximately one-half of the United States enacted guest statutes similar to our own between the years 1927 and 1939. A number of such statutes have since been repealed, but it appears that at least 20 have not. At least 12[5] of such statutes had their constitutionality promptly tested—predominately by a claim of equal protection denial. Except for *Silver* v. *Silver,* (1929) 280 U.S. 117, 50 S.Ct. 57, 74 L.Ed. 221, the only one of such cases to have been determined by the Supreme Court of the United States, those decisions are not binding upon this Court. They are, nevertheless, worthy of our careful analysis and consideration; and we are the incidental beneficiaries of the labors of highly qualified lawyers and judges who have extensively litigated questions which, although at a variance in some particulars, are essentially identical to the ones confronting us.

*Silver* v. *Silver, supra,* was limited to a single question of equal protection under the United States Constitution. The statute was upheld, with but little elaboration, as a permissible legislative strike at what the Legislature regarded as the evils of vexatious litigation arising out of the gratuitous carriage of passengers in automobiles. It was further said

---

5. *Pickett* v. *Mathews,* (1939) 238 Ala. 542, 192 So. 261; *Roberson* v. *Roberson,* (1937) 193 Ark. 669, 101 S.W.2d 961; *Forsman* v. *Colton,* (1933) 136 Cal.App. 97, 28 P.2d 429; *Silver* v. *Silver,* (1928) 108 Conn. 371, 143 A. 240; *Coleman* v. *Rhodes,* (Del. Super. 1932) 159 A. 649; *Ludwig* v. *Johnson,* (1932) 243 Ky. 533, 49 S.W.2d 347; *Naudzius* v. *Lahr,* (1931) 253 Mich. 216, 234 N.W. 581, 74 A.L.R. 1189; *Rogers* v. *Brown,* (1935) 129 Neb. 9, 260 N.W. 794; *Smith* v. *Williams,* (1935) 51 Ohio App. 464, 1 N.E.2d 643; *Perozzi* v. *Ganiere,* (1935) 149 Ore. 330 40 P.2d 1009; *Campbell* v. *Paschall,* (1938) 132 Tex. 226, 121 S.W.2d 593; *Shea* v. *Olson,* (1936) 185 Wash. 143, 53 P.2d 615.

that the distinction drawn between passengers in automobiles and in other vehicles was not disabling, inasmuch as the Legislature could not be held rigidly to the choices of regulating all or none and that even though some abuses may not be hit, it was enough that the statute struck at the evil where it was felt and reached the class of cases where it most frequently occurred.

In determining if our statute bears a fair and substantial relationship to the purpose for which it was enacted, its purpose must first be ascertained. No purpose being expressed in the text of our statute and there being no legislative records from which it may be gleaned, we are required to make this determination from a consideration of what its effects are likely to be. If any logical purpose can be perceived, we are bound to test it, although this may require considerable speculation.

Purposes traditionally attributed to such statutes have been the fostering of hospitality by insulating generous drivers from lawsuits instituted by ungrateful guests and the elimination of possibility of collusive lawsuits. A number of other purposes have also been proffered by both proponents and opponents to the statutes, but we believe their existence to be unsupportable. We shall, therefore, proceed to a consideration of whether or not the classifications of guests and non-guests are reasonable and are fairly and substantially related to either or both of such purposes.

During the forty-three years following the *Silver* decision, there were at least fourteen guest statutes challenged,[6] and although there were exceptions, notably the Court of Appeals of Kentucky, state courts generally upheld such statutes upon the authority of the *Silver* case. 8 Am. Jur. 2d *Automobiles and Highway Traffic* § 472, pp. 36, 37. Since 1973, however,

---

6. *See* note 5, *supra.* See also *Vogts* v. *Guerrette*, (1960) 142 Colo. 527, 351 P.2d 851; *Hillock* v. *Heilman*, (Fla. 1967) 201 So. 2d 544; *Delany* v. *Badame*, (1971) 49 Ill. 2d 168, 274 N.E.2d 353; *Romero* v. *Tilton*, (1967) 78 N.M. 696, 437 P.2d 157.

not fewer than seventeen such cases have been litigated in the state courts of last resort.[7] As might be expected, the deluge followed a holding that if there had ever been substantial and rational relations between classifications created in the aforementioned legislative purposes, a fact not admitted, they had nevertheless been eroded by total alteration of the relevant factual premises. *Brown* v. *Merlo*, (1973) 8 Cal. 3d 855, 506 P.2d 212, 106 Cal. Rptr. 388. With the exception of *Primes* v. *Tyler*, (1975) 43 Ohio St. 2d 195, 331 N.E.2d 723, these cases have been determined in the light of the *Brown* case, the courts either adopting one or more of its rationales or rejecting them all. A review of *Brown*, therefore, eliminates the need for a detailed review of each such case.

The *Brown* opinion accepted the traditional concept that the legislative purposes were the protection of hospitality and elimination of collusive lawsuits and proceeded to demonstrate, to the satisfaction of that court, that neither constituted a rational basis for the different treatment actually accorded by the classification scheme.

The *Brown* opinion has been skillfully drawn, and counsel advocating the repeal of the statute probably could do no better than to parrot the numerous declarations embodied therein decrying its rationality. After having carefully considered that case and the arguments of counsel for the plain-

---

7. *Beasley* v. *Bozeman*, (1975) 294 Ala. 288, 315 So.2d 570; *White* v. *Hughes*, (1975) 257 Ark. 627, 519 S.W.2d 70; *Brown* v. *Merlo*, (1973) 8 Cal. 3d 855, 106 Cal. Rptr. 388, 506 P.2d 212; *Richardson* v. *Hansen*, (1974) 186 Colo. 346, 527 P.2d 536; *Justice* v. *Gatchell*, (1974) Del., 325 A.2d 97; *Thompson* v. *Hagan*, (1974) 96 Idaho 19, 523 P.2d 1365; *Keasling* v. *Thompson*, (Iowa 1974) 217 N.W.2d 687; *Henry* v. *Bauder*, (1974) 213 Kan. 751, 518 P.2d 362; *Manistee Bank & Trust Co.* v. *McGowan*, (1975) 394 Mich. 655, 232 N.W.2d 636; *Botsch* v. *Reisdorff*, (1975) 193 Neb. 165, 226 N.W.2d 121; *Laakonen* v. *Eighth Judicial District Court*, (1975) 91 Nev. 506, 538 P.2d 574; *McGeehan* v. *Bunch*, (1975) 88 N.M. 308, 540 P.2d 238; *Johnson* v. *Hassett*, (N. D. 1974) 217 N.W.2d 771; *Primes* v. *Tyler*, (1975) 43 Ohio St. 2d 195, 331 N.E.2d 723; *Duerst* v. *Limbocker*, (1974) 269 Ore. 252, 525 P.2d 99; *Behrns* v. *Burke*, (1975) S.D., 229 N.W.2d 86; *Cannon* v. *Oviatt*, (Utah 1974) 520 P.2d 883. *See also Tisko* v. *Harrison*, (Tex. Civ. App. 1973) 500 S.W. 2d 565.

tiff herein, however, we have not been pursuaded, and the presumption of constitutionality remains. We shall cite and comment upon some of the more notable points of *Brown*, but we are not required to meet and vacate each proposition and supportive conclusion thereof, and we will make no attempt to do so although doubtlessly some do have merit.

The California statute distinguishes between automobile guests and all other guests.

We grant that the host in another conveyance or in his home or at any other place is also logically entitled to protection against the ingrate who would take an unconscionable advantage of his generosity. This argument was taken into account in *Silver* v. *Silver, supra,* and it was held that the Legislature is not held rigidly to a choice of regulating all or none, but that it is sufficient if it strikes at an evil where it most frequently occurs. Additionally, the Indiana statute, although restricted in its application to motor vehicle guest passengers, is considerably broader than is the California act, which was applicable only to automobile passengers.

It was said in *Brown* that the fact that a guest had not paid for the ride could not serve as a rational basis to single him out for discriminatory treatment, and asserted that it was invidious wholly to deprive a non-paying passenger protection against a negligent injury.

The California court acknowledged the reasonableness of requiring a higher standard of care for paying passengers than for non-paying ones. Is there really a basic distinction between raising a standard for persons within a given class and in lowering the standard for persons not within that class? In either event, there is a recognized disparity. And, if a disparity of one degree is accepted, can we say, without other factors being present, that a disparity of two degrees is invidious?

Quoting from another case, the California court said, "We

see no reason why the host should be less vigilant for his own guest than he must be for a guest in another car."

We recognize that the guest in the other car was given no option. Granting that in a utopian society, a host would exercise greater care for the safety of his guests than he would for his own, is it reasonable that the guest should have a right to demand it? Is it unreasonable to expect him either to cast his lot with his host or to decline to accept the hospitality?

"* * * Widespread liability insurance has largely eliminated any notion of 'ingratitude' that may have once adhered to a guest suit against his host."

Liability insurance is not a general condition precedent to ownership or operation of a motor vehicle in this state. Neither does this argument take into account that the guest's claim need not be limited to the host's liability insurance limits or that such insurance is provided for the protection of a host—not for the benefit of a guest. It also occurs to us that substantial detriments accrue to one who finds himself the defendant in a tort action, not the least of which is the possibility of a cancellation of his insurance or a substantial increase in his premiums. Notwithstanding that there may be no direct financial loss arising from it, a lawsuit is not an experience which endears the plaintiff to the defendant.

"* * * If the guest statute's operation could originally be justified as rationally related to an interest in protecting hosts from ingratitude, this purpose can not longer support a provision's constitutionality in light of present liability insurance coverage."

For the reason stated above, we do not accept this proposition. If we did, however, it can not be denied that the same circumstances, i.e. that the increased use of liability insurance, renders the policy of protecting against insurance frauds all the more reasonable.

"* * * It is unreasonable to eliminate causes of action of an entire class of persons simply because some undefinite portion of a designated class may file fraudulent lawsuits."

This statement is drawn from cases wherein various tort immunity doctrines have been overturned. The premise has considerable validity, and the leaning of this Court is discernible from our holdings in recent cases abolishing the doctrines of interspousal immunity,[8] charitable immunity,[9] and governmental immunity.[10] The value of such doctrines is relative, and the judgment of reasonableness, therefore must be made in view of that relativity. But who is to make the judgment? These doctrines of immunity were judicially created and therefore were subject to judicial repeal when, in our opinion, they were determined to be no longer compatible in our society. The decision to grant immunity to host drivers against negligence claims of guest passengers, on the other hand, was made by the Legislature, and we, therefore, are not at liberty to abolish it upon the same considerations.

"* * * The 'collusion' rationale assumes that the parties—driver and guest—are willing to perjure themselves on the negligence issue, and thus that the guest must be entirely precluded from prosecuting any lawsuit. Under the terms of the guest statute, however, the rider and driver can escape the State's bar, and thwart the 'anti-collusion' purpose, simply by colluding on the issue of whether the rider provided any 'compensation' for the ride."

The line between due care and negligence is a fine one and not susceptible to precise formulation. A determination of whether or not due care was exercised may be greatly influenced by such testimonial factors as a half truth, a slight exaggeration, a careless omission, a voice inflection or a glance. There can be no effective

8. *Brooks* v. *Robinson*, (1972) 259 Ind. 16, 284 N.E.2d 794.
9. *Harris* v. *Young Women's Christian Association*, (1968) 250 Ind. 491, 237 N.E.2d 242.
10. *Campbell* v. *State*, (1972) 259 Ind. 55, 284 N.E.2d 733.

statutory protection against perjury. We think it no constitutional infirmity that a statute may not operate to perfection, if it may reasonably be expected to operate effectively. We do not agree with the California Court that the classifications are so over-inclusive as to defy notions of fairness or reasonableness.

The Supreme Court of Ohio in *Primes* v. *Tyler*, (1975) 43 Ohio St.2d 195, 331 N.E.2d 723, in overturning its guest statute, proceeded upon the traditional premise as to its purposes. Although recognizing the validity of the State's interests, it held that the objective of preventing ingratitude, to which we have referred as "fostering hospitality," was no longer viable in view of the availability of liability insurance which factor, it acknowledged, had previously led it to abrogate the doctrine of charitable immunity—a judge created doctrine. With respect to the "anti-collusion" purpose, the Ohio Court invoked a combination equal protection and due process argument used successfully in *Vlandis* v. *Kline*, (1973) 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63.

In *Vlandis* v. *Kline, supra,* the State of Connecticut had enacted a statute designed to deny the lower tuition rates of the state universities to students who were not bona fide Connecticut residents and to those who took up such residency for the purpose of obtaining the favored rates. The statute drew strict classifications and proceeded to make them "permanent and irrebuttable." It was obvious that the statute would operate against some bona fide residents who were not within the scope of the statutory purpose and the Court held that the denial of the opportunity to contravert the presumption and to prove the bona fides of residency by presenting evidence infringed upon the right to due process and equal protection. The Ohio Court reasoned that the guest act imposed, in effect, an "irrebuttable presumption" that a lawsuit filed by a non-paying guest was fraudulent or collusive, when such presumption was not necessarily true in fact, and that it, therefore, denied a "remedy by due course of law."

*Vlandis* v. *Kline, supra,* is, for us, difficult to interpret, but we would not apply it as did the Ohio Court. Three Justices joined in the majority opinion, and three in the result. The Justices concurring in the result wrote two separate opinions, and the three dissenting Justices wrote two dissenting opinions. A factor that stands out in that case but which is absent in the Ohio case and in the one before us, is a finding that reasonable alternative means for determining bona fide residence were available. We acknowledge an "overbreadth" in our guest statute, in that those with bona fide damage claims are caught in the same net with the would-be collusive and fraudulent. However, we perceive no reasonable alternative. There is no way, short of full-blown litigation—the very evil the act is designed to avert—that the bona fides of the plaintiff's claim could be determined.

We perceive a third and to us a very likely legislative policy behind our guest statute, one which has not, to our knowledge, been previously suggested in any of the litigated cases and which, for want of a better designation, could be called protection against the "benevolent thumb syndrome." This policy recognizes the value to our society of liability insurance to protect against the inequity of damages inflicted by otherwise financially irresponsible motor vehicle owners and operators. This policy also recognizes that the cost of such insurance is unalterably determined by the loss experiences of the companies providing such insurance, that such insurance is optional with the owners and operators and is purchased by them, not for the benefit of the victims of the negligence but rather for their own personal benefit and at their expense. The policy also recognizes the "Robin Hood" proclivity of juries. The tendency to take from the rich and give to the needy is as American as apple pie; but unfettered, it may logically be expected to lead to the escalation of liability insurance premiums to the level where the majority of users would be either unable or unwilling to pay them. We have witnessed the development of just such conflicts in

recent years, particularly with respect to both motor vehicle and professional liability insurance.

We uniformly recognize that the presence or absence of liability insurance is a factor that weighs improperly, but heavily, in jury determinations. It is for this reason that we endeavor—although frequently without success—to keep such information from juries.

The cases that recognized the "fostering of hospitality" as a legislative purpose of guest statutes, also appear to have recognized that hospitality is deserving of gratitude and generally generates it. Great tolerance for the errors and human frailties of one's family members, neighbors and friends is also the norm and motivates the vast majority of us to accept the burdens that they may occasionally inflict upon us, rather than to seek legal redress. Therefore, when a damage suit has been filed against a plaintiff's host for injuries sustained in an automobile accident, it is highly probable that the host's loss, if any, is compensable from liability insurance. Otherwise, suit would not likely have been filed. In fact, in the recent cases hereinbefore cited, one of the reasons most frequently urged and accepted for holding the fostering of hospitality to be no longer, if ever, a valid legislative purpose, has been that wide spread liability insurance has largely eliminated any notion of ingratitude that may at one time have adhered to a guest suit against his host—that there simply is no notion of ingratitude in suing your host's insurer. It is, therefore, not unreasonable to credit the Legislature with recognizing that when a guest sues his host, the jury can and will most likely assume that the real defendant is an insurance company and will relax the standard of proof traditional in negligence actions and render biased judgments in favor of plaintiffs. The guest statute may, therefore, logically be a legislative endeavor to promote financial responsibility for damages caused by the negligent operation of motor vehicles by protecting liability insurance companies from the human propensities of juries

to weigh their "benevolent thumb" along with the evidence of the defendant's negligence.

It is at once obvious that the concept of protecting against the "benevolent thumb syndrome" is subject to attack as a denial of equal protection upon many of the same bases advanced against the "hospitality" and "anti-collusion" arguments. We believe, however, that such attacks are less piercing because the policy carries the armor of a more logical and therefore more probable legislative purpose.

In support of the contention that our guest statute offends against Indiana Constitution Article 1, § 12, it is urged that the statute purports to eliminate a remedy guaranteed to remain inviolate, and we are cited to *Ludwig v. Johnson, et al.*, (1932) 243 Ky. 533, 49 S.W.2d 347. The Kentucky constitutional provision is almost identical to our own, providing, "All courts shall be open and every person for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law, * * *." (Kentucky Constitution Article 14). The Kentucky opinion is difficult to interpret, because it appears to base the decision upon three distinct constitutional provisions, leaving vagueness as to whether the decision could stand upon the "due course of law" provision alone.

Another section of the Kentucky Constitution unmistakably provides for the recovery of damages for death caused by negligence. (Kentucky Constitution § 241), a provision in no manner contained in our own Constitution. The Kentucky guest statute, like our own, eliminated most actions for death, as well as most actions for injuries, occurring to motor vehicle guest passengers. The Kentucky Court stated that the guest act clearly contravened the aforementioned constitutional provision allowing damages for deaths caused by negligence. Responding to an argument that the invalid provision could be eliminated by eliminating the word "death" and that the valid portion of the statute was severable from the invalid, the court said that it was "unnecessary to pursue that avenue of inquiry; * * *" and proceeded to additional considerations.

The Kentucky Constitution also has another proscription not found in our own. "The General Assembly shall have no power to limit the amount to be recovered for injuries resulting in death, or for injuries to persons or property." (Kentucky Constitution § 54.) The court viewed this provision in conjunction with §§ 14 and 241 noted above and said, "* * * The conclusion is inescapable that the intention of the framers of the Constitution was to inhibit the Legislature from abolishing rights of action for damages for death or injuries caused by negligence."

The Kentucky Court then proceeded to a consideration of Section 14 of its Constitution and a review of *Stewart* v. *Houk*, (1928) 127 Ore. 589, 271 P. 998, where a similar guest statute had been declared to be in conflict with a constitutional provision almost identical to Kentucky Constitution Section 14, the Oregon Court saying that the purpose of the constitutional provision was "to save from the legislative abolishment those jural rights which had become well established prior to the enactment of our Constitution." Thus, it could be argued pursuasively that the Kentucky Court was saying that Section 14 of its Constitution standing alone was a bar to the guest statute. If so, however, we are perplexed by the Court's lengthy dissertations upon the other constitutional sections mentioned and the reference to their inter-play.

We also note that both the Oregon and Kentucky acts went further than our own. The Oregon act precluded all actions for death and injuries sustained by guest passengers, and the Kentucky act precluded all actions for such deaths and injuries, except those resulting from intentional acts. Our own statute preserves the right of recovery for injuries and deaths caused by "wanton or wilful misconduct."

We also note, that the Oregon Court, subsequent to its decision in *Stewart* v. *Houk, supra,* upheld a revised guest statute which preserved causes for deaths and injuries if

"such accident shall have been intentional on the part of said owner or operator or caused by his heedlessness or his reckless disregard to the rights of others." The Oregon Court, commenting upon the Kentucky decision, observed that the Kentucky act limited recovery to instances in which the accident "resulted from an intentional act" and elected to follow cases holding that a right of action for a tort to happen in the future was not property and that though Legislatures could not extinguish a right entirely, they could restrict or modify liability.

We decline to comment upon the Oregon statutory reference to intentional accidents except to acknowledge our curiosity concerning such an apparent incongruity.

We are drawn to *Gallegher* v. *Davis, et al.*, (Del. Super. 1936) 183 A. 620, as a logical disposition of the "due course of law" arguments. In that case, the court was concerned with a constitutional provision almost identical to our own.[11] And a guest statute containing the saving provision, "unless such accidents shall have been intentional on the part of such owner or operator or caused by his wilful or wanton disregard of the rights of others." The Delaware Court, like Oregon's, had previously invalidated a guest statute containing no such savings provision because it denied a right of action to a guest in an automobile under all circumstances. *Coleman* v. *Rhodes*, (Del. Super. 1932) 159 A. 649. The following quotations from the *Gallegher* case are expressive of our viewpoint of the restraints imposed by our constitutional Article 1, § 12.

"Generally, we think, the provision is inserted in Constitutions to secure the citizen against unreasonable and

11.  Delaware Constitution, Art. 1 § 9 provides: All courts shall be open; and every man for an injury done him in his reputation, person, movable or immovable possessions, shall have remedy by the due course of law, and justice administered according to the very right of the cause and the law of the land, without sale, denial, or unreasonable delay or expense; and every action shall be tried in the county in which it shall be commenced, unless when the judges of the court in which the cause is to be tried shall determine that an impartial trial thereof cannot be had in that county. Suits may be brought against the State, according to such regulations as shall be made by law.

arbitrary deprivation of rights whether relating to life, liberty, property, or fundamental rights of action relating to person or property; and that it applies as well to the judicial branch of government, as to the legislative and executive branches. It embraces the principle of natural justice that in a free government every man should have an adequate legal remedy for injury done him by another.

"The inquiry, in every case, must be directed to the nature of the right alleged to have been infringed upon. Undoubtedly, arbitrary and unreasonable abolishment of a right of action to redress injury to the essential rights of person or property is prohibited. Certainly, the legislature may not declare to be right that which is essentially wrong, nor say that which is a definite, substantial injury to fundamental rights to be no injury, nor abolish a remedy given by the common law to essential rights without affording another remedy substantially adequate. But no one has a vested interest in any rule of the common law. Rights of property which have been created by the common law cannot be taken away without due process; but the law itself, as a rule of conduct, within constitutional limits, may be changed at the will of the legislature. The great office of statutes is to remedy defects in the common law as they develop, and to adopt it to the change of time and circumstance. Munn v. Illinois, 94 U.S. 113, 24 L.Ed. 77; Mackin v. Detroit-Timkin Axle Co., 187 Mich. 8, 153 N.W. 49. Negligence is merely the disregard of some duty imposed by law; and the nature and extent of the duty may be modified by legislation, with a corresponding change in the test of negligence, New York Cent. R. Co. v. White, 243 U.S. 188, 37 S.Ct. 247, 61 L.Ed. 667, L.R.A. 1917D, 1, Ann. Cas. 1917D, 629, and, as said by the same court with respect to the Fourteenth Amendment, in Silver v. Silver, supra, when that case was before it (280 U.S. 117, 50 S.Ct. 57, 58, 74 L.Ed. 221, 65 A.L.R. 939), 'We need not * * * elaborate the rule that the Constitution does not forbid the creation of new rights, or the abolition of old ones recognized by the common law, to attain a permissible legislative object.'

"* * *

"We cannot say that existing conditions did not present a manifest evil affecting the general welfare and public morals necessitating the imposition of a degree of restraint upon a certain class of suitors, nor can we say that the means adopted by the legislature do not bear a reasonable relation to the end sought to be accomplished.

"The provision of the Constitution does not, either expressly or by necessary implication, forbid the legislature

to measure the degree of care to be accorded by an owner or operator of an automobile to a gratuitous passenger; for it does not constitute the common law a straight jacket about the legislative body rendering it powerless reasonably to regulate social relations in accordance with changing conditions." 183 A. 624-26.

That our Constitution was not intended to render the common law static is made clear to us by its schedule which expressly provides for changes in the following language: "Laws Continued. First. All laws now in force, and not inconsistent with this Constitution, shall remain in force, *until they shall expire or be repealed.*" (Emphasis ours). Essentially, the same provision was also embodied in our first constitution (1816) under Article XII, Section 4.

Plaintiff (Appellee) Green argues alternatively that if the guest statute be held constitutional, it, nevertheless, does not bar her action because as a guest invited by the host, as opposed to a self-invited guest, she was not within the scope of the guest statute. She has cited no authority in support of this proposition, and we reject it as being without merit. The considerations determining whether or not one is a guest being transported without payment therefor and thus within the scope of the statute, were set forth in *Allison* v. *Ely et al.,* (1960) 241 Ind. 248, 170 N.E.2d 371, Reh. Den.

We there said that if the trip is primarily social or for pleasure as distinguished from business, incidental benefits, even payment, do not preclude the guest relationship.

We also reject, as frivolous, Plaintiff's unsupported argument that the guest statute promotes negligent and careless driving and consequently violates Article 1, Section 1 of our state Constitution.

\* \* \*

HOLDINGS

\* \* \*

## DEMPSEY v. LEONHERDT (GREEN)

In *Dempsey* v. *Green,* we hold that the trial court erred in its determination that the Indiana guest statute is unconstitutional and in its overruling of the defendant's (appellant's) motion to correct errors. The court's rulings granting the plaintiff (appellee) a new trial upon the issue of damages and upon the motion to correct errors addressed thereto are rendered moot.

The parties, by their briefs, agree that the case was submitted to the jury solely upon the theory of negligence, in view of the trial court's pre-trial ruling upon the constitutional issue. They are not in agreement, however, concerning the appropriate order to be issued by this Court in the event we reverse the trial court. The defendant (appellant) contends that the finding of negligence by the jury precludes the existence of wanton and wilful misconduct prerequisite to a recovery under the guest statute. He cites us to *Dierickx* v. *Davis, Agent,* (1922) 80 Ind. App. 71, 137 N.E. 685, wherein it was said that negligence could not merge into willfulness. That was not a guest statute case, however, and we think the statements from it are not applicable in such context.

The crux of our guest statute is that to afford a recovery, the course of conduct which was the proximate cause of the injury complained of must have been pursued with knowledge and indifference that an injury to the guest is probable. *Bedwell* v. *DeBolt,* (1943) 221 Ind. 600, 50 N.E.2d 875. Negligence alone is not enough, but depending upon the circumstances surrounding the acts or omissions causing the injury, it may evidence the wilfulness or wantonness required by the statute. It is the conscious indifference to the consequences that renders conduct wilful or wanton. That the defendant might have been negligent, therefore, does not preclude the possibility that he might also have been wilful and wanton, as those terms have been defined in context

with our guest statute. That is a question for the jury to determine under proper instructions from the court.

The judgment of the trial court is reversed and the cause is remanded for further proceedings consistent with this opinion.

\* \* \*

## SIDLE v. MAJORS

The foregoing opinion in *Dempsey* v. *Leonherdt (Green)* is determinative of the questions certified to us by the United States Court of Appeals for the Seventh Circuit.

The Indiana guest statute, being Acts of 1929, ch. 201, § 1, as amended by Acts of 1937, ch. 259, § 1; Ind. Code § 9-3-3-1 (Burns 1973), does not contravene either § 12 or § 23 of Article 1 of the Constitution of Indiana.

The Clerk of this Court is directed to certify copies of this opinion to The Honorable Robert A. Sprecher, Judge, The Honorable Walter J. Cummings, Judge, and The Honorable Thomas E. Fairchild, Chief Judge, all of the United States Court of Appeals for the Seventh Circuit, Chicago, Illinois.

Givan, C.J., DeBruler and Hunter, JJ., concur; Arterburn, J., concurs with opinion.

### CONCURRING OPINION

ARTERBURN, J.—I concur in what is said by the majority in this case about the constitutionality of the guest passenger statute. It occurs to me, however, that this whole question is easily resolved by analogy to the law of bailments.

Under the common law (not by statute) a paid bailee or one for hire was required to exercise a higher degree of care than a gratuitous bailee who assumed possession of property out of generosity or kindness. "It is ordinarily stated that where a bailment is for the sole benefit of the bailor, the bailee is liable only for gross negligence or bad faith, willful act, or fraud." 8 C.J.S. *Bailments* § 28 at 418-419 (1962) ; *see also* 8 Am. Jur. 2d *Bailments* § 209 (1963).

In other words, the common law imposed upon a warehouseman or carrier of freight for pay is a higher standard of care than that imposed upon one restoring property for no payment for a friend or neighbor. The legislature has the right to enact the same principle with reference to gratuitous operators of automobiles with guests and those who are paid for the transportation of passengers. If at common law the courts saw fit to impose different degrees of negligence and care with reference to gratuitous acts as compared with those for pay, then certainly the legislature constitutionally may do so.

NOTE.—Reported at 341 N.E.2d 763.